# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EATON A. LANG IV, individually    :
and on behalf of all similarly    :
situated persons,    :
    :    **Case No. 3:20-cv-00044-ARC**
    **Plaintiffs,**    :
    :    *Civil Action*
**vs.**    :
    :    *Honorable A. Richard Caputo*
**ADECCO USA, INC.,**    :
    :    *Electronically Filed*
    **Defendant.**    :
    :

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................1

II.  STATEMENT OF FACTUAL ALLEGATIONS ...........................................1

III.  PROCEDURAL HISTORY ..........................................................3

IV.  QUESTIONS FOR REVIEW.........................................................3

V.  LEGAL ARGUMENT..................................................................4

A.  Standard of Review...................................................................4

B.  Count I Should Be Dismissed Because the MMA Does Not Contain a Private Right of Action. ...........................................................5

      1.  Pennsylvania Courts are Extremely Reluctant to Imply a Private Right of Action Absent Specifically Expressed Intent by the Legislature.........................................................6

      2.  The MMA Lacks "Rights-Creating Language," Focusing Instead on the "Person Regulated" .............................................8

      3.  The MMA Lacks a Private Remedy .........................................10

      4.  The Court Should Decline to Follow *Palmiter v. Commonwealth Health Systems, Inc.*........................................14

C.  Count II Should Be Dismissed Because Plaintiff Cannot Identify a Well-Recognized Facet of Public Policy at Stake in this Case and Plaintiff Has a Statutory Right to Relief...........................................................17

VI.  CONCLUSION..........................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acara v. Banks,*
470 F.3d 569 (5th Cir. 2006) ..........................................................................9, 13

*Alexander v. Sandoval,*
532 U.S. 275 (2001).................................................................................*passim*

*Angelini v. U.S. Facilities, Inc.,*
2018 WL 3155995 (E.D. Pa. June 27, 2018)................................................19, 20

*Am. Trucking Ass'ns v. Del. River Joint Toll Bridge Comm'n*
458 F.3d 291 (3d Cir. 2006) ............................................................................7, 8

*Ashcroft v. Iqbal,*
566 U.S. 662 (2009)........................................................................................4, 5

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)...........................................................................................4

*Booth v. McDonnell Douglas Truck Svc., Inc.,*
585 A.2d 24 (Pa. Super. 1991) .........................................................................18

*Bright v. Westmoreland Cnty.,*
380 F.3d 729 (3d Cir. 2004) ...............................................................................1

*Clay v. Advanced Computer Applications,*
559 A.2d 917 (Pa. 1989)..............................................................................17, 20

*Collins v. Nw. Nat'l Ins. Grp.,*
2 Pa. D. & C. 3d 568 (Allegheny Cnty. C.C.P. 1977).......................................13

*Collins v. State,*
2013 WL 5874770 (Commonw. Ct. Oct. 31, 2013)...........................................13

*Cort v. Ash,*
422 U.S. 66 (1975)............................................................................................15

*Fowler v. UPMC Shadyside*,
     568 F.3d 203 (3d Cir. 2009) .................................................................................4

*Geary v. U.S. Steel Corp.*,
     319 A.2d 917 (Pa. 1989) ....................................................................................17

*Gonzaga Univ. v. Doe*,
     536 U.S. 273 (2002) ..............................................................................................8

*Higgins v. Frank Bonin Funeral Parlor*,
     2015 WL 10944445 (M.D. Pa. Feb. 12, 2015) ...................................................7

*Horne v. Flores*,
     556 U.S. 433 (2009) ............................................................................................13

*Hunger v. Grand Cent. Sanitation*,
     670 A.2d 173 (Pa. Super. 1996) ........................................................................18

*Hurt v. Phila. Hous. Auth.*,
     70 Pa. D. & C. 4th 142 (Philadelphia Cnty. C.C.P. 2005) ................................10

*Jacques v. AKZO Intern. Salt, Inc.*,
     619 A.2d 748 (Pa. Super. 1993) (*abrogated on other grounds by
     O'Connor v. Cons. Coin Caterers Corp.*, 517 U.S. 308 (1996)) ......................19

*Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co.
     (USA)*, 677 F.3d 178 (3d Cir. 2012) ...................................................................9

*Keystone ReLeaf LLC v. Pa. Dep't of Health*,
     186 A.3d 505 (Pa. Commw. Ct. 2018) ................................................................5

*Macken v. Lord Corp.*,
     585 A.2d 1106 (Pa. Super. 1991) ......................................................................19

*McGonagle v. Union Fidelity Corp.*,
     556 A.2d 878 (Pa. Super. 1989) ........................................................................18

*McLaughlin v. Gastrointestinal Specialists, Inc.*,
     750 A.2d 283 (Pa. 2000) ...............................................................................17, 18

*Merill, Lynch, Pierce, Fenner & Smith v. Curran*,
     456 U.S. 353 (1982) ............................................................................................15

*NASDAQ OMX PHLX, Inc. v. PennMont Securities*,
   52 A.3d 296 (Pa. Super. 2012) ...............................................................7, 8, 11, 15

*Neer v. Pelino*,
   389 F. Supp. 2d 648 (E.D. Pa. 2005)......................................................................15

*Palmiter v. Commonwealth Health Systems, Inc.*,
   No. 19-cv-1315 (Lackawanna Cnty. C.C.P. Nov. 22, 2019)............14, 15, 16, 20

*Paul v. Lankenau Hosp.*,
   569 A.2d 346 (Pa. 1990) .........................................................................................18

*Perry v. Tioga Cnty*,
   649 A.2d 186 (Pa. Commw. Ct. 1994) ...................................................................20

*Solomon v. U.S. Health Care Sys. of Pa., Inc.*,
   62 Pa. D. & C. 4th 104.............................................................................................13

*Spencer Bank, S.L.A. v. Seidman*,
   309 F. App'x 546 (3d Cir. 2009) ..........................................................................7, 8

*Three Rivers Ctr. for Indep. Living v. Hous. Auth. of the City of
   Pittsburgh*,
   382 F.3d 412 (3d Cir. 2004) ..................................................................................8, 9

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979).........................................................................................11, 15

*Wisniewski v. Rodale, Inc.*,
   510 F.3d 294 (3d Cir. 2007) ...............................................................8, 9, 10, 11

*Estate of Witthoeft v. Kiskaddon*,
   733 A.2d 623 (Pa. 1999) ......................................................................................6, 7

**Statutes**

35 P.S. § 10231.102(3)..................................................................................................5

35 P.S. § 10231.301 ....................................................................................................12

35 P.S. § 10231.1308(b) ....................................................................................6, 13, 16

35 P.S. § 10231.1308(c).....................................................................................13, 16

35 P.S. § 10231.2103(b)(1) ...................................................................6, 10

21 U.S.C. § 812(c) ...............................................................................18

39 U.S.C. § 3009(b) ...........................................................................9, 10

**Other Authorities**

28 Pa. Code § 1441.21, *et seq.* ............................................................11

Federal Rule of Civil Procedure 12(b)(6) ............................................3, 4

Local Rule of Civil Procedure 7.5 ..........................................................3

Local Rule of Civil Procedure 7.8(a) ....................................................14

## I.    <u>INTRODUCTION</u>

Pennsylvania's Medical Marijuana Act ("MMA"), 35 P.S. § 10231.101, *et seq.*, lacks a private right of action and thus prevents Plaintiff Eaton A. Lang IV ("Mr. Lang" or "Plaintiff") from seeking relief in this Court.  Rather, the MMA provides aggrieved employees with an administrative remedy that Mr. Lang has apparently not yet explored.  This available administrative remedy also prevents Mr. Lang from stating a common law claim for wrongful discharge in violation of public policy.

For these reasons, and as further explored herein, Defendant Adecco USA, Inc. ("Adecco" or "Defendant") respectfully submits this memorandum of law in support of its Motion to Dismiss and urges the Court to dismiss Mr. Lang's Complaint in its entirety with prejudice.

## II.    <u>STATEMENT OF FACTUAL ALLEGATIONS[1]</u>

According to the Complaint, in mid-November 2019, Mr. Lang applied for employment with Adecco, a national recruiting and staffing service.  (Compl. ¶¶ 4, 11, 18).  On November 19, 2019, Plaintiff interviewed for several positions with

---

[1] For the purposes of this Motion and Memorandum of Law only, Adecco assumes the truth of the factual allegations set forth in Plaintiff's Complaint.  *See Bright v. Westmoreland Cnty.*, 380 F.3d 729, 735 (3d Cir. 2004) (in deciding a motion to dismiss, the court must construe the facts alleged in the Complaint in the light most favorable to the non-movant).  Adecco does not admit or concede the truth, materiality, or relevance of any purported facts contained in the Complaint and/or recited herein for any other purpose.

Adecco representative Jillian Martell.  (Compl. ¶¶ 5, 19).  At the conclusion of the interview, Ms. Martell allegedly informed Plaintiff that in order to be eligible for employment, he was required to first pass a drug test.  (Compl. ¶¶ 5, 20).

Mr. Lang submitted for a drug test at Mid-State Occupational Health Services, Inc. ("Mid-State") on November 19, 2019, and disclosed to the nurse collecting his sample that he was an individual certified to use medical marijuana under the MMA.  (Compl. ¶¶ 6, 21-22).  Mid-State then forwarded Mr. Lang's urine sample to First Advantage Corporation ("First Advantage") for testing.  (Compl. ¶ 23).  On or about November 22, 2019, Plaintiff alleges he received a phone call from a physician at First Advantage who advised him that the drug test detected the presence of marijuana.  (Compl. ¶ 24).  Plaintiff advised the physician that he was licensed to use medical marijuana under the MMA.  (Compl. ¶ 25).  The physician allegedly responded that Adecco's drug policy does not allow for medical marijuana.  (Compl. ¶ 26).

On November 23, 2019, Plaintiff claims Ms. Martell texted him, stating that he had failed his drug test and therefore was not eligible for employment.  (Compl. ¶¶ 7, 27).  Plaintiff asked Ms. Martell whether Adecco recognizes the employment protections in the MMA, and Ms. Martell allegedly responded "We follow federal regulations so unfortunately we don't."  (Compl. ¶¶ 7, 29).

Plaintiff now brings claims against Adecco for violation of the MMA ("Count I"); and for "wrongful discharge/wrongful rescission of offer of employment" in violation of public policy ("Count II") on behalf of himself and all others similarly situated. Plaintiff cannot state a viable claim under either legal theory. Thus, Plaintiff's entire Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III.  <u>PROCEDURAL HISTORY</u>

Plaintiff filed his Complaint on December 3, 2019 in the Court of Common Pleas for Lackawanna County, Pennsylvania. On January 9, 2020, Adecco removed this action to the United States District Court for the Middle District of Pennsylvania, and then on January 16, 2020, Adecco filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 1, 5). Pursuant to Local Rule of Civil Procedure 7.5, Adecco now submits this Memorandum of Law in support of its Motion.

## IV.  <u>QUESTIONS FOR REVIEW</u>

1) Does the MMA lack a private right of action, thus preventing Mr. Lang from stating a claim upon which relief can be granted?

<u>Suggested Answer</u>: Yes.

2) Is Mr. Lang's wrongful discharge claim legally deficient because he cannot identify a well-recognized facet of public policy implicated by his alleged discharge?

    <u>Suggested Answer</u>:  Yes.

3) Is Mr. Lang's wrongful discharge claim legally deficient because he has an available statutory remedy under the MMA?

    <u>Suggested Answer</u>:  Yes.

## V.   <u>LEGAL ARGUMENT</u>

### A.   <u>Standard of Review</u>

A complaint must be dismissed when it fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Thus, a plaintiff is required to plead more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).  Instead, "a plaintiff must show that the allegations of his or her complaint are plausible" and a "complaint has to 'show' such an entitlement with its facts."  *Fowler v. UPMC Shadyside*, 568 F.3d 203, 210-11 (3d Cir. 2009) (citing *Iqbal*, 566 U.S. at 677-80).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has

alleged—but has not '*show[n]*'—'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (emphasis added).

Applying this standard, the Complaint fails to state a claim as a matter of law. Therefore, Adecco urges the Court to dismiss Mr. Lang's Complaint in its entirety with prejudice.

### B.   Count I Should Be Dismissed Because the MMA Does Not Contain a Private Right of Action.

On May 17, 2016, the MMA took effect within the Commonwealth of Pennsylvania, establishing the "framework for the legalization of medical marijuana in the Commonwealth for certain medical conditions." *Keystone ReLeaf LLC v. Pa. Dep't of Health*, 186 A.3d 505, 508 (Pa. Commw. Ct. 2018). The Legislature's stated intention in passing the MMA was to:

(i)    Provide a program of access to medical marijuana which balances the need of patients to have access to the latest treatments with the need to promote patient safety[;]

(ii)   Provide a safe and effective method of delivery of medical marijuana to patients[; and]

(iii)  Promote high quality research into the effectiveness and utility of medical marijuana.

35 P.S. § 10231.102(3). Accordingly, the statute identifies the Pennsylvania Department of Health as the "agency responsible for administering the Act" and promulgating necessary regulations. *See Keystone ReLeaf*, 186 A.3d at 508 (citing 35 P.S. §§ 10231.301, 10231.1107).

Count I of Mr. Lang's Complaint seeks to bring a claim for an alleged violation of Section 2103(b)(1) of the MMA, which states as follows:

> No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee regarding an employee's compensation, terms, conditions, location or privileges solely on the basis of such employee's status as an individual who is certified to use medical marijuana.

35 P.S. § 10231.2103(b)(1).   Despite placing this obligation on employers, however, the MMA does not provide employees with an explicit private right of action to seek damages in Court.  Instead, the legislature identified the Department of Health as having the sole responsibility for "assess[ing] a civil penalty for a violation of th[e] act [or] a regulation promulgated under th[e] act" "[i]n addition to any other remedy available to the [D]epartment."  35 P.S. § 10231.1308(b). Without an express private right of action available to Mr. Lang, he must argue that the Court should create a private remedy where the legislature did not.  The Court should decline this invitation and dismiss Count I for failure to state a claim upon which relief can be granted.

### 1.   Pennsylvania Courts are Extremely Reluctant to Imply a Private Right of Action Absent Specifically Expressed Intent by the Legislature

It has long been recognized that "[t]he violation of a statute and the fact that some person suffered harm does not automatically give rise to a private cause of action in favor of the injured person."  *Estate of Witthoeft v. Kiskaddon*, 733 A.2d

623, 627 (Pa. 1999).  "Under Pennsylvania law, state courts are extremely reluctant to imply a cause of action for damages from a state statute in the absence of some specific expressed intent by the legislature to permit such a cause of action." *Higgins v. Frank Bonin Funeral Parlor*, 2015 WL 10944445, at *5 (M.D. Pa. Feb. 12, 2015).

Pennsylvania courts have looked to the decisions of the United States Supreme Court for guidance in determining whether an implied right of action should be read into a statute.  *See Estate of Witthoeft*, 733 A.2d at 626; *NASDAQ OMX PHLX, Inc. v. PennMont Securities*, 52 A.3d 296 (Pa. Super. 2012).  As explained by the U.S. Supreme Court, when determining whether a statute provides a private right of action,

> [t]he judicial task is to interpret the statute [the legislature] has passed to determine whether it displays an intent to create *not just a private right but also a private remedy*.  Statutory intent on this latter point is determinative.  Without it, a cause of action does not exist and *courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.*

*Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citations omitted) (emphasis added).  A private right of action may only be implied when a court "can *confidently conclude* [the legislature] so intended."  *Spencer Bank, S.L.A. v. Seidman*, 309 F. App'x 546, 548 (3d Cir. 2009) (quoting *Am. Trucking Ass'ns v. Del. River Joint Toll Bridge Comm'n*, 458 F.3d 291, 303 (3d Cir. 2006)) (emphasis in original).

"[F]or an implied private right of action to exist, a statute must manifest [the legislature's] intent to create [both] (1) a personal right, and (2) a private remedy." *NASDAQ*, 52 A.3d at 308 (quoting *Three Rivers Ctr. for Indep. Living v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004); *see also Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007). As Section 2103(b) of the MMA neither creates rights, nor provides any discernable private remedy, and instead places the exclusive power to enforce the Act in the hands of the Department of Health, Plaintiff cannot make this showing.

### 2. The MMA Lacks "Rights-Creating Language," Focusing Instead on the "Person Regulated"

In determining whether a statute creates a personal right, the Court must review "the 'text and structure' of the statute" to determine whether it contains "'rights-creating' language that focuses on the 'individual protected' rather than 'the person regulated.'" *Wisniewski*, 510 F.3d at 301-02 (quoting *Sandoval*, 532 U.S. at 288-89). Indeed, the inquiry is not simply who would benefit from the Act, but rather whether the legislature intended to confer rights upon those beneficiaries. *Spencer Bank*, 309 F. App'x at 549 (citing *Am. Trucking Ass'ns*, 458 F.3d at 297); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (for a statute to create private rights of action, "its text *must* be phrased in terms of the persons benefited") (quotation marks and citation omitted) (emphasis added).

Statutes containing prohibitions rather than rights-creating language generally fail to meet this standard. *See, e.g.*, *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (finding no private right of action under HIPAA because it "does not contain any express language conferring privacy rights on individuals. Instead, it focuses on regulating persons that have access to individually identifiable medical information and who conduct certain health care transactions"); *Three Rivers*, 382 F.3d at 429 ("HUD regulations are directed at Housing Authority's obligations as grantee," and therefore are "not couched in terms of any beneficiary's entitlement" that would indicate an intention to create a personal right); *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (USA)*, 677 F.3d 178, 186-87 (3d Cir. 2012) (finding the Investment Company Act of 1940 does not contain an implied private right of action because the language of the statute focuses on the insurance company being regulated, not the investors who would benefit from the statute).

The Third Circuit's analysis in *Wisniewski* is instructive. Therein, the Court analyzed three sections in the Postal Reorganization Act ("PRA"), and found only one of the three contained rights-creating language. Specifically, Section 3009(b) of the PRA provides that merchandise mailed in violation of the statute "may be treated as a gift by the recipient, *who shall have the right* to retain, use, discard, or dispose of it in any manner[.]" *Wisniewski*, 510 F.3d at 302; 39 U.S.C. § 3009(b)

(emphasis added). "With an explicit reference to a right and a focus on the individual protected," the Court found Section 3009(b) created a private right. *Wisniewski*, 510 F.3d at 302. By contrast, two provisions which placed requirements on persons mailing unsolicited merchandise was found to focus on the "person regulated" rather than the "individual protected[,]" and therefore did not create a private right. *Id.*

In contrast to Section 3009(b) of the PRA, Section 2103(b)(1) of the MMA focuses explicitly on prohibiting certain actions by employers rather than creating rights for employees. *See* 35 P.S. § 10231.2103(b)(1) ("*No employer may* discharge, threaten, refuse to hire or otherwise discriminate or retaliate") (emphasis added). Thus, the MMA lacks the necessary "rights creating" language required for the Court to find an implied right of action. On this basis alone, the Court should dismiss Count I of the Complaint for failure to state a claim.

### 3.    The MMA Lacks a Private Remedy

Even if the Court were to find that Section 2103(b)(1) of the MMA contains rights-creating language, which it does not, Count I of the Complaint should still be dismissed because the MMA fails the second prong of the test—it gives no indication whatsoever that the legislature intended a private remedy. *See Hurt v. Phila. Hous. Auth.*, 70 Pa. D. & C. 4th 142 (Philadelphia Cnty. C.C.P. 2005) (even where a statute uses rights-creating terms, "a plaintiff suing under an implied right

of action still must show that the statute manifests an intent 'to create not just a private right but also a private remedy'") (quoting *Sandoval*, 532 U.S. at 286)). The contours of this inquiry vary, with courts frequently considering the text and structure of the statute in question; the statute's legislative history; and whether the statute contains a comprehensive remedial scheme.  *See Wisniewski*, 510 F.3d at 303-04 (collecting cases).  Focusing on these factors, the MMA lacks any indication that the General Assembly intended to create a private remedy for alleged violations of Section 2103(b)(1).

First and foremost, the MMA is entirely silent as to what, if any, private remedy an employee could recover from an employer accused of violating the statute.  Indeed, if the Court were to allow Plaintiff's MMA claim to proceed, it would be left to fashion a private remedy for Plaintiff without any guidance from the legislature whatsoever.  The legislature's silence on this point weighs heavily against finding an implied private right of action.  *See NASDAQ*, 52 A.3d at 309 ("Courts will generally not imply 'a private right of action on the basis of [legislative] silence.'") (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979)).

The legislative history of the MMA also lacks any indication that the General Assembly intended to create a private remedy for a violation of Section 2103(b)(1).  Likewise, the MMA's regulations, 28 Pa. Code § 1441.21, *et seq.*, do

11

not provide any indication that the MMA was intended to create a private remedy for alleged violations of the Act's employment provisions. Instead, the legislature has seemingly been content to rely upon the Act's administrative enforcement mechanisms for addressing violations of Section 2103(b)(1).

The MMA specifically identifies the Pennsylvania Department of Health as being responsible for enforcing the Act. 35 P.S. § 10231.301. It further endows the Department of Health with the power to assess civil penalties when the Act has been violated:

> In addition to any other remedy available to the [D]epartment, the [D]epartment may assess a civil penalty for a violation of this act, a regulation promulgated under this act or an order issued under this act or regulation as provided in this subsection. The following shall apply:
>
> (1) The [D]epartment may assess a penalty of not more than $10,000 for each violation and an additional penalty of not more than $1,000 for each day of a continuing violation. In determining the amount of each penalty, the department shall take the following factors into consideration:
>
>> (i)   The gravity of the violation.
>>
>> (ii)  The potential harm resulting from the violation to patients, caregivers or the general public.
>>
>> (iii) The willfulness of the violation.
>>
>> (iv)  Previous violations, if any, by the person being assessed.
>>
>> (v)   The economic benefit to the person being assessed for failing to comply with the requirements of this

> act, a regulation promulgated under this act or an
> order issued under this act or regulation.

35 P.S. § 10231.1308(b).   The Department further has the authority to impose

sanctions for violations of the law, including cease and desist orders, or "any other

penalty authorized by law" for violations of the MMA.  35 P.S. § 10231.1308(c).

"Agency enforcement creates a strong presumption against implied private

rights of action that must be overcome."  *Wisniewski*, 510 F.3d at 305 (finding no

private right of action, in part, because the Federal Trade Commission was

empowered to enforce the statute); *see also Collins v. State*, 2013 WL 5874770, at

*5 (Commonw. Ct. Oct. 31, 2013) (finding no private right of action under the No

Child Left Behind Act because it was "enforceable only by the agency charged

with administering it") (quoting *Horne v. Flores*, 556 U.S. 433, 456 n.6 (2009));

*Collins v. Nw. Nat'l Ins. Grp.*, 2 Pa. D. & C. 3d 568, 574 (Allegheny Cnty. C.C.P.

1977) (finding the Pennsylvania Unfair Insurance Practices Act does not create a

private right of action, relying on the plaintiff's ability to file a complaint with the

state governmental agency tasked with enforcing the Act); *Acara*, 470 F.3d at 571

("Because HIPAA specifically delegates enforcement [to the Secretary of Health

and Human Services], there is a strong indication that Congress intended to

preclude private enforcement"); *Solomon v. U.S. Health Care Sys. of Pa., Inc.*, 62

Pa. D. & C. 4th 104, 110 (finding no implied private right in state health care act

where statute provided for administrative remedies).

The General Assembly provided the Department of Health with a robust enforcement procedure to address violations of the Act, further indicating that it had no intention of creating a private right of action under the MMA. *See Sandoval*, 532 U.S. at 290 ("The express provision of one method of enforcing a substantive rule suggests that [the legislature] intended to preclude others"). As there is no indication that the General Assembly intended to create a private remedy under Section 2103(b), Mr. Lang cannot meet the second prong of the inquiry, and Count I should be dismissed.

### 4. The Court Should Decline to Follow *Palmiter v. Commonwealth Health Systems, Inc.*

Adecco anticipates that Mr. Lang will rely heavily on *Palmiter v. Commonwealth Health Systems, Inc.*, No. 19-cv-1315 (Lackawanna Cnty. C.C.P. Nov. 22, 2019),[2] a recent unpublished decision which permitted a plaintiff's claim under Section 2103(b)(1) to proceed beyond the preliminary objections stage. Because the *Palmiter* court applied an improper standard in determining whether a private right of action exists, this Court should decline to follow in its footsteps.

---

[2] The Court of Common Pleas' Memorandum Opinion and Order in *Palmiter v. Commonwealth Health Systems, Inc.*, No. 19-cv-1315 (Lackawanna Cnty. C.C.P. Nov. 22, 2019), is attached hereto as Exhibit A, along with all other unpublished decisions cited in this Memorandum of Law, in accordance with Local Rule of Civil Procedure 7.8(a).

In determining whether the MMA contains a private right of action, the *Palmiter* court applied the test articulated by the United States Supreme Court more than four decades ago in *Cort v. Ash*, 422 U.S. 66 (1975): "(1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff." *Palmiter*, Mem. Op. at 10-11; *Cort*, 422 U.S. at 78.

Over the years, however, the Supreme Court has dismantled the *Cort* framework, repeatedly ruling that the sole focus of the analysis should be legislative intent. *See, e.g.*, *Sandoval*, 532 U.S. at 286-87; *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979); *NASDAQ*, 52 A.3d at 305-09 (exploring how the Supreme Court has repeatedly "eroded the *Cort* framework and narrowed the court's inquiry" to focus exclusively on legislative intent since the *Redington* decision in 1979). Absent a clear indication of legislative intent to create a private right of action, the other *Cort* factors need not be considered. *Redington*, 442 U.S. at 575-76; *see also Neer v. Pelino*, 389 F. Supp. 2d 648, 653 (E.D. Pa. 2005) ("we need not 'trudge through all [of the *Cort*] factors when the dispositive question of legislative intent has been resolved.'") (quoting *Merill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 388 (1982)).

15

The *Palmiter* court went well beyond a simple examination of legislative intent set forth in the text of the statute and, instead looked to the broad remedial purpose of anti-discrimination legislation in recognizing a private right of action. The ultimate basis for its decision boils down to the following statement: "Without the availability of an implied right of action for an employee who is fired solely for being certified as a medical marijuana user, the anti-discrimination directive in Section 2103(b) would be rendered impotent." *Palmiter*, Mem. Op. at 37. However, the Supreme Court has explicitly rejected the notion that courts have the obligation "to provide such remedies as are necessary to make effective the [legislative] purpose expressed by a statute." *Sandoval*, 532 U.S. at 287. To the contrary, the Supreme Court has made clear that, absent a specific finding of statutory intent to create a private right of action, "a cause of action does not exist and *courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.*" *Id.* at 286-87 (emphasis added).

As described above, the MMA places the exclusive right of enforcement of the Act with the Department of Health, providing it with the power to enforce civil penalties and sanctions. 35 P.S. § 10231.1308(b), (c). Section 2103(b)(1) is not exempted from the Department of Health's oversight or control. While the courts may be dissatisfied with this remedy, that is an insufficient basis to recognize a private right of action under Supreme Court precedent.

Thus, because the MMA lacks any indication that the legislature intended to create either a private right or a private remedy for violations of the MMA, Mr. Lang has failed to identify a private right of action that will allow him to seek relief in court.   Therefore, Count I of the Complaint must be dismissed with prejudice.

### C.   Count II Should Be Dismissed Because Plaintiff Cannot Identify a Well-Recognized Facet of Public Policy at Stake in this Case and Plaintiff Has a Statutory Right to Relief

At Count II, Mr. Lang seeks to bring a common law claim for wrongful termination/rescission of an offer of employment, asserting that Adecco's failure to hire him due to his failed drug test constitutes a violation of Pennsylvania's public policy.   Because Plaintiff has failed to identify a well-recognized facet of public policy implicated by Adecco's alleged decision not to hire, and because the MMA provides him with a statutory remedy—administrative enforcement by the Department of Health—Count II should also be dismissed.

"As a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship."   *Clay v. Advanced Computer Applications*, 559 A.2d 917, 918 (Pa. 1989) (citing *Geary v. U.S. Steel Corp.*, 319 A.2d 174 (Pa. 1974)).   "Exceptions to this rule have been recognized only in the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy."   *McLaughlin v.*

*Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000) (quoting *Paul v. Lankenau Hosp.*, 569 A.2d 346, 348 (Pa. 1990)).

To fall within a public policy exception to the at-will employment doctrine, a plaintiff must demonstrate that his termination threatens a clear and substantial public policy articulated in the Pennsylvania Constitution, or in the Commonwealth's legislation, administrative regulations, or judicial decisions. *Id.* at 288. "It is not sufficient that the employer's actions toward the employee are unfair." *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 175-76 (Pa. Super. 1996) (citations omitted). Rather, "[t]he public policy claimed to have been violated must go to the heart of the citizen's rights, duties, and responsibilities, or the discharge is not wrongful." *Booth v. McDonnell Douglas Truck Svc., Inc.*, 585 A.2d 24, 28 (Pa. Super. 1991) (citing *McGonagle v. Union Fidelity Corp.*, 556 A.2d 878, 885 (Pa. Super. 1989)).

At its core, the basis for Mr. Lang's wrongful discharge/wrongful rescission of offer of employment claim boils down to Adecco's alleged refusal to hire him for a safety-sensitive position due to the fact that he failed a drug screening for a substance prohibited by federal law. *See* 21 U.S.C. § 812(c). It can hardly be said that an employer's use of a drug test to ensure the safety of all employees, as well as its reliance on federal law's prohibition of marijuana as a Schedule I controlled substance violates a clear mandate of public policy.

18

Even if Mr. Lang could articulate a clear mandate of public policy violated by Adecco's alleged actions, however, Mr. Lang himself acknowledges the well-established principle that an employee may only bring a common law wrongful discharge claim "so long as there is no other statutory remedy available."  (Compl. ¶ 66); *see also Angelini v. U.S. Facilities, Inc.*, 2018 WL 3155995, at *12 (E.D. Pa. June 27, 2018) (dismissing common law wrongful discharge claim because "[i]t is well-settled that Pennsylvania law does not recognize a common law cause of action for violating public policy when there is an existing statutory remedy") (citing *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936, 941 (3d Cir. 2003)); *Macken v. Lord Corp.*, 585 A.2d 1106, 1108 (Pa. Super. 1991) ("Pennsylvania recognizes a cause of action in the absence of a statutory remedy and when an important, well-recognized facet of public policy is at stake") (citations omitted).  "It is the existence of a statutory claim, and not the success of one that determines whether a common law claim is preempted."  *Angelini*, 2018 WL 3155995, at *12 (quoting *DeMuro v. Philadelphia Hous. Auth.*, 1998 WL 962103, at *5 (E.D. Pa. Dec. 21, 1998)); *Jacques v. AKZO Intern. Salt, Inc.*, 619 A.2d 748, 753 (Pa. Super. 1993) (*abrogated on other grounds by O'Connor v. Cons. Coin Caterers Corp.*, 517 U.S. 308 (1996)).

As discussed above, the MMA provides Plaintiff with a statutory remedy—he can seek a civil penalty against Adecco from the Department of Health.

19

Statutes providing for administrative remedies are routinely found to foreclose a plaintiff's ability to bring a claim under the common law theory of wrongful discharge.  *See Clay*, 559 A.2d at 920 (the Pennsylvania Human Relations Act's statutory scheme "would be frustrated if aggrieved employees were permitted to circumvent the [Pennsylvania Human Relations Commission] by simply filing claims in court" under a wrongful discharge in violation of public policy theory); *Perry v. Tioga Cnty*, 649 A.2d 186, 189 (Pa. Commw. Ct. 1994) (affirming dismissal of wrongful discharge claim where plaintiff had a statutory remedy under the Pennsylvania Whistleblower Act); *Angelini*, 2018 WL 3155995, at *12 (dismissing common law wrongful discharge claim where plaintiff had a statutory remedy under the Whistleblower Act).

Therefore, Count II of the Complaint should be dismissed with prejudice for failure to state a claim.[3]

---

[3] In the event that the Court allows Mr. Lang's claim under the MMA to proceed, that would provide an additional basis for dismissing Count II due to the clear statutory remedy available to him.

The court in *Palmiter* took a different approach, allowing the plaintiff's wrongful discharge claim to proceed despite the fact that the court declined to dismiss his claim under the MMA.  *See* Mem. Op. at 49.  In so doing, the Court seemingly rejected the case law cited above, which did not allow a plaintiff to plead a wrongful discharge claim in the alternative where a statutory remedy existed. Thus, this decision further calls the soundness of the *Palmiter* court's reasoning into question.

## VI.   <u>CONCLUSION</u>

For all of the foregoing reasons, Adecco respectfully requests that the Court dismiss Mr. Lang's Complaint in its entirety, with prejudice.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

<u>/s/ Jessica M. Bocchinfuso</u>
Jessica M. Bocchinfuso (PA #314371)
Jacqueline R. Barrett (admission *pro hac vice* pending)
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2800 (Telephone)
(215) 995-2801 (Facsimile)
jessica.bocchinfuso@ogletree.com
jacqueline.barrett@ogletree.com

Dated: January 30, 2020

*Attorneys for Defendant, Adecco USA, Inc.*

21

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EATON A. LANG IV, individually** | : | |
| **and on behalf of all similarly** | : | |
| **situated persons,** | : | |
| | : | **Case No. 3:20-cv-00044-ARC** |
| **Plaintiffs,** | : | |
| | : | *Civil Action* |
| **vs.** | : | |
| | : | *Honorable A. Richard Caputo* |
| **ADECCO USA, INC.,** | : | |
| | : | *Electronically Filed* |
| **Defendant.** | : | |
| | : | |

## CERTIFICATE OF COMPLIANCE

I hereby certify, as required by Local Rule 7.8, that the word count does not exceed 5,000 words.  Rather, the word count is 4,798 words per the word count features used in the undersigned's word processing system.


*/s/ Jessica M. Bocchinfuso*
Jessica M. Bocchinfuso
*Attorney for Defendant*

22

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EATON A. LANG IV, individually** | : | |
| **and on behalf of all similarly** | : | |
| **situated persons,** | : | |
| | : | **Case No. 3:20-cv-00044-ARC** |
| **Plaintiffs,** | : | |
| | : | *Civil Action* |
| **vs.** | : | |
| | : | *Honorable A. Richard Caputo* |
| **ADECCO USA, INC.,** | : | |
| | : | *Electronically Filed* |
| **Defendant.** | : | |
| | : | |

## CERTIFICATE OF SERVICE

I hereby certify that, on January 30, 2020, I caused the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint to be filed via the Court's electronic filing system, where it is available for download. Counsel for Plaintiff has consented to service via the Court's electronic filing system.


*/s/ Jessica M. Bocchinfuso*
Jessica M. Bocchinfuso
*Attorney for Defendant*


41593851.1