# EXHIBIT A
# UNPUBLISHED OPINIONS

2014 WL 316988
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

Shams UDDIN and Samiha Mitwaally, Plaintiffs,
v.
SEARS, ROEBUCK & CO. and John Does 1–100, Defendants.

Civil Action No. 13–6504 (JLL).
|
Jan. 27, 2014.

**Attorneys and Law Firms**

Anthony J. Macri, Parsippany, NJ, Robert Bruce Woodruff, Law Office of Robert B. Woodruff, P.C., Morristown, NJ, for Plaintiff.

Brett M. Anders, Peter S. Seltzer, Jackson Lewis PC, Morristown, NJ, for Defendant.

**ORDER**

JOSE L. LINARES, District Judge.

***1 THIS MATTER** comes before the Court by way of Plaintiffs' motion to remand this matter to the Superior Court of New Jersey, Essex County pursuant to 28 U.S.C. § 1447(c). This Court had referred defendants' motions to the Honorable Michael A. Hammer, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1) (B). Magistrate Judge Hammer tiled a Report and Recommendation in connection with said motions on January 2, 2014. In particular, Magistrate Judge Hammer recommended that Plaintiffs' motion to remand be denied. To date, the Court has received no objection with respect to Magistrate Judge Hammer's Report and Recommendation, and for good cause shown,

**IT IS** on this *27* **day of January, 2013,**

**ORDERED** that the Report and Recommendation of Magistrate Judge Hammer, filed on January 2, 2014 [Docket Entry No. 22], is hereby **ADOPTED** as the findings of fact and conclusions of law of this Court; and it is further

**ORDERED** that Plaintiffs' motion to remand [Docket Entry No. 14] is **denied.**

**IT IS SO ORDERED.**

**REPORT AND RECOMMENDATION**

HAMMER, United States Magistrate Judge.

**I. INTRODUCTION**

This matter comes before the Court on the motion of Plaintiffs Shams Uddin and Samiha Mitwally to remand this matter to the Superior Court of New Jersey, Essex County pursuant to 28 U.S.C. § 1447(c). Pursuant to Local Civil Rule 72.1, the Honorable Jose L. Linares, United States District Judge, referred the motion to this Court for Report and Recommendation. For the reasons set forth below, the Undersigned respectfully recommends that Plaintiffs' motion be denied.

**II. BACKGROUND**

Plaintiffs, both residents of New Jersey, are former employees of Defendant Sears, Roebuck & Company ("Sears"). *See* Compl., ECF No. 1, at 1, 2. [1] Plaintiffs were both terminated on August 24, 2013 and allege that their terminations were motivated by their religious beliefs. *Id.* Ms. Mitwally also claims that from August 12, 2012 until her termination, she was a victim or harassment and was assaulted by an assistant manager. *Id.* at 3.

The Complaint contains three causes of action against Sears. Count One alleges that Sears terminated the employment of Plaintiff Shams Uddin on August 24, 2013, on the basis of his religion, in violation of New Jersey's Law Against Discrimination ("NJLAD"). Count Two alleges that Sears terminated the employment of Plaintiff Samiha Mitwally on August 24, 2013, on the basis of her religion, in violation of NJLAD. Count Three alleges that an assistant manager at Sears harassed and assaulted Plaintiff Samiha Mitwally. The Complaint also contains a fourth count against fictitious defendants that may have been responsible for Plaintiffs'

 © 2020 Thomson Reuters. No claim to original U.S. Government Works. 

terminations. *Id.* at 4. Plaintiffs seek compensatory damages, punitive damages, counsel fees, costs of suit, lawful interest, and any other appropriate damages.

Sears was served with a copy of the Complaint no earlier than October 1, 2013. *See* Notice and Petition for Removal, ECF No. 1 ¶ 3. Sears filed its removal petition on October 29, 2013. *Id.* ¶ 4. In both the removal petition and in opposition to Plaintiffs' motion to remand, Sears asserted that removal was appropriate as this Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a). *Id.* ¶¶ 8–9. Sears asserted that this action is between citizens of different states and the amount in controversy exceeds $75,000. *Id.* ¶ 8. As to diversity of citizenship, Sears represented that it is a New York corporation with its principal place of business in Illinois, and that Plaintiffs were citizens of New Jersey. *Id.* ¶ 9. Regarding the amount in controversy, Sears claimed that in 2012, Mr. Uddin earned $66,885.63 and Ms. Mitwally earned $48,117.64. *Id.* ¶ 10. Therefore, if damages were limited to a single year of back-pay, Plaintiffs' recovery would total $115,003.27. *Id.* Sears also contends that the amount in controversy clearly exceeds $75,000 because Plaintiffs also seek damages for emotional distress, punitive damages, and counsel fees. *Id.*

***2** On November 7, 2013, Plaintiffs filed a certification "in opposition to the motion to remove[.]" *See* ECF No. 6. Plaintiffs argued in opposition that "[t]here is absolutely no reason why the within matter needs to be removed" as the State court has *in personam* jurisdiction over Sears and Sears only seeks to engage in "forum shopping." *Id.* ¶¶ 5–6.

Sears filed a response to Plaintiffs' November 7, 2013 filing on November 13, 2013. *See* ECF No. 7. In this submission, Sears noted that Plaintiffs improperly filed an opposition to removal instead of a motion to remand. Sears also reiterated its position that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), and added that complete diversity would still exist even if Sears' parent corporation, Sears Holding, was a defendant. *Id.*

On November 14, 2013, the Court issued an order addressing Plaintiffs' November 7, 2013 certification. *See* ECF No. 8. The Court, while referencing certain deficiencies contained in Plaintiffs' filing, ordered that the Court would take no further action as to that submission as it failed to comply with Local Civil Rules 7.1 and 7.2. *Id.* The Court ordered that any amended motion must be filed on or before November 30, 2013. *Id.*

Plaintiffs moved to remand on December 11, 2013. *See* ECF No. 14. In their brief, Plaintiffs essentially concede there is diversity of citizenship, but argue that Sears has not demonstrated the amount in controversy requirement is satisfied. *See* Pls. Br ., ECF No. 14–1 at 2 ("While arguably there could be diversity of citizen based upon the purported fact that the parent company of Sears, Roebuck, and Company is located in Illinois, there is no showing by the defendant that the amount of controversy on behalf of each plaintiff is worth in excess of $75,000"). Plaintiffs assert that Sears "has not consented to and does not contend that the amount in controversy exceeds $75,000.00 nor does it admit that plaintiffs' cases are respectively worth in excess of $75,000.00." *Id.* Furthermore, Plaintiffs assert that because the fictitious defendants have not consented to removal, removal is improper. *Id* .

On December 12, 2013, the Court issued an Order to Show Cause as to why Plaintiffs' motion to remand based upon non-jurisdictional grounds should not be denied for failing to have been filed within 30 days of removal, as required by 28 U.S.C. § 1447(c). *See* ECF No. 15. In this Order, the Court required each party to submit a brief that included:

(1) citations to caselaw addressing if and when a motion to remand may be filed after the 30 days provided by 28 U.S.C. § 1447(c) have passed; and

(2) citations to caselaw and recitations of fact sufficient to demonstrate whether "good cause" exists for the Court to modify its November 14, 2013 Order, which required any motion to remand be filed by November 30, 2013.

*Id.*

On December 20, 2013, Plaintiffs filed a letter brief in response to this Order. *See* ECF No. 18. In their submission, Plaintiffs request that the Court consider their motion to remand a *nunc pro tunc* filing and ask that it be considered filed on the date that they

filed their opposition to Sears' removal petition. *See id.* Plaintiffs, however, failed to comply with the Court's December 12, 2013 Order to Show Cause, because they failed to provide citations to caselaw addressing if and when a motion to remand may be filed after the thirty days provided by 28 U.S.C. § 1447(c) have passed. Plaintiffs also failed to provide caselaw and recitations of fact sufficient to demonstrate whether good cause existed for the Court to modify its November 14, 2013 Order.

***3** Sears filed its letter brief on December 23, 2013. *See* ECF No. 21. First, Sears asserted that Plaintiffs' motion must be denied as it is untimely pursuant to the Court's November 14, 2013 Order, and Plaintiffs have failed to demonstrate good cause to modify that scheduling order. *See id.* at 1–2, 4. Second, Sears asserts that it has established that the amount in controversy exceeds $75,000 and therefore the Court has subject matter jurisdiction over this matter. *Id.* at 2, 4–5. Third, Sears asserts that any remaining deficiencies in the petition alleged by Plaintiffs are technical defects that had to have been raised within thirty days. Sears asserts that Plaintiffs' failure to move to remand based upon these defects within thirty days constitutes a waiver of these arguments. *Id.*

## III. ANALYSIS

The Court notes that a decision to remand is dispositive. *In re U.S. Healthcare,* 159 F.3d 142, 146 (3d Cir.1998) ("[A]n order of remand is no less dispositive than a dismissal order of a federal action for lack of subject matter jurisdiction where a parallel proceeding is pending in the state court."). Accordingly, the Court respectfully makes the following Report and Recommendation to the Honorable Jose L. Linares.

### A. Subject Matter Jurisdiction

The Court shall initially put aside the deficiencies in Plaintiffs' submissions and address the substantive dispute raised by Plaintiffs' motion: Was removal of this matter from the Superior Court proper based upon diversity jurisdiction?

Section 1441(a) of Title 28 of the United States Code permits a defendant to remove a civil action in state court to a federal court where the action could have been filed originally—that is, where the federal court has subject matter jurisdiction over the action. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Section 1446 outlines the procedures for removal, and § 1447 outlines the procedures following removal. 28 U.S.C. §§ 1446, 1447.[2] Defects in removal may be procedural or jurisdictional. Under 28 U.S.C. § 1446(b)(1), a defendant has thirty days to remove a case, and this time limit "is a procedural provision, not a jurisdictional one." *Farina v. Nokia Inc.,* 625 F.3d 97, 114 (3d Cir.2010) (citing *Ariel Land Owners. Inc. v. Dring,* 351 F.3d 611, 614 (3d Cir.2003)). In turn, a plaintiff's "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). Jurisdictional defects, however, may be raised at any time. *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 69, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).

Sears bears the burden of demonstrating that removal was proper as it is the party asserting federal jurisdiction. *Frederico v. Home Depot,* 507 F.3d 188, 193 (3d Cir.2007); *see also Brown v. Jevic,* 575 F.3d 322, 326 (3d Cir.2009) (describing this burden as "heavy"). The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand ." *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990) (citing *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987)).

***4** Here, Sears asserts that this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a). Section 1332(a) confers original jurisdiction over "all civil actions where the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States."

#### *1. Diversity of Citizenship*

Section 1332(c)(1) provides that for purposes of removal "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." Regarding fictitious entities, § 1441 plainly provides, "[f]or purposes of removal under this chapter, the

citizenship of defendants sued under fictitious names shall be disregarded."

As addressed *supra,* Plaintiffs essentially concede that diversity of citizenship exists. Furthermore, the Court concludes that there is complete diversity as there is no dispute that, at all relevant times: (1) Plaintiffs were citizens of New Jersey and (2) Sears was a citizen of New York and Illinois. [3]

*2. Amount in Controversy*

In *Frederico v. Home Depot,* the Court of Appeals for the Third Circuit articulated the framework for determining the "quantum of proof to be used in ascertaining the requisite amount in removal cases sounding in diversity." 507 F.3d 188, 193 (3d Cir.2007). The *Frederico* court distinguished between the approaches in *Morgan v. Gay,* 471 F.3d 469 (3d Cir.2006) and *Samuel–Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392 (3d Cir.2004). *Frederico,* 507 F.3d at 196–97. Under *Morgan,* "where the complaint *specifically* avers that the amount sought is less than the jurisdictional minimum ... a defendant seeking removal must prove to a legal certainty that plaintiff can recover the jurisdictional amount." *Id.* (emphasis added). Under *Samuel–Bassett,* "[b]y contrast ... where the plaintiff has *not specifically averred* in the complaint that the amount in controversy is less than the jurisdictional minimum ... the case must be remanded if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Id.* at 197 (emphasis in original). In other words, if a plaintiff expressly limits the claim to avoid subject matter jurisdiction, by expressly stating the amount at issue is less than $75,000, then the removing party bears the burden of proving to a legal certainty the amount in controversy exceeds the statutory amount. *See Frederico,* 507 F.3d at 196–97. If the plaintiff does not specifically state the amount is below the threshold, then the plaintiff must prove to a legal certainty that the claim could not exceed the statutory threshold. *See id.* at 195, 197. To establish jurisdiction, the defendant must establish only that the amount of controversy has been met as to one plaintiff. The court may then determine to exercise supplemental jurisdiction over the other plaintiffs. *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 549, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).

*5 Before applying the legal certainty test under either *Morgan* or *Samuel Basset* "any factual disputes must be resolved." *U .S. Olympic Comm. v. Reichmann,* No. 09–4618, 2010 WL 2179527, at *4 (D.N.J. May 28, 2010). Courts use the preponderance of the evidence standard to resolve such jurisdictional factual disputes. *Id.* (citing *Frederico,* 507 F.3d at 196). Courts "examine the facts as they exist when the complaint was filed" and "generally accept[ ] the plaintiff's good faith allegations." *McCollum v. State Farm Ins. Co.,* 376 F. App'x 217, 220 (3d Cir.2010) (internal quotations and citations omitted). When the facts are not dispute or after a court makes factual findings, the court then applies the legal certainty standard to those facts. *Frederico,* 507 F.3d at 194, 196.

Thus, in determining the amount in controversy, a court begins with a reading of the complaint filed in state court and determines whether the *Morgan* or *Samuel–Basset* approach applies. *See Frederico,* 507 F.3d at 197–98, *accord Samuel–Basset,* 357 F.3d at 398. Then a court must consider the defendant's notice of removal, determine whether any factual disputes exist over jurisdiction, and make findings if necessary. *See Frederico,* 507 F.3d at 198. This includes consideration of the Complaint. *Id* . at 197. Finally, a court applies the legal certainty test to the facts before it. *See id,* at 198–99.

Here, there do not appear to be any factual disputes impacting the Court's jurisdictional analysis. For example, Sears does not dispute that Mr. Uddin was terminated on August 24, 2013 and Mr. Uddin does not dispute that his salary was $66,885.63 in 2012. To the extent that Plaintiffs attempt to create a "dispute" based upon Sears' denial of liability, this argument is meritless. An action does not become removable if and only if the removing defendant concedes liability.

Plaintiffs' Complaint is silent as to the amount in controversy. In any event, Plaintiffs do not assert that their damages are below the jurisdiction threshold. *See* Compl., ECF No. 1. Therefore, the Court must apply the standard set forth in *Samuel–Bassett* to the instant motion.

The first count of the Complaint is based upon the alleged unlawful termination of Mr. Uddin under

NJLAD. Under NJLAD, compensatory damages may include front- and back-pay. Mr. Uddin was paid $66,885.63 in 2012. *See* Notice and Petition for Removal, ECF No. 1 ¶ 10. Additionally, Mr. Uddin seeks punitive damages as to this cause of action. Because punitive damages are recoverable in certain circumstances under NJLAD, *see Cavuoti v. N.J. Transit Corp.,* 161 N.J. 107, 735 A.2d 548 (1999), punitive damages must also be considered when determining the amount in controversy. *Frederico,* 507 F.3d at 199. Under New Jersey law, punitive damages can total up to five times the compensatory damages. N.J. Stat. Ann. § 2A:15–5.13(b). Additionally, Mr. Uddin seeks attorney's fees in this count and these fees may be considered when determining the amount in controversy. *Frederico,* 507 F.3d at 199. The Third Circuit has held that fees can be estimated as high as 30% of the judgment when making this calculation. *Id.* Therefore, if Mr. Uddin were to recover less than two months of back-pay, punitive damages, and attorney's fees, his damages would exceed the jurisdiction threshold. The amount in controversy as to Ms. Mitwally's unlawful termination claim would similarly exceed the jurisdictional threshold if she obtained a similar recovery. Further, in the face of Defendants' arguments concerning the amount in controversy, Plaintiffs offer little to conclude that their claims cannot exceed the statutory threshold.

***6** Based upon the foregoing, it is clear that Plaintiffs have not demonstrated to a legal certainty that their claims can not exceed the statutory threshold. *Frederico,* 507 F.3d at 195. Accordingly, the Court concludes that it has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).

**B. Timeliness**

The Court does not need to address the timeliness of Plaintiffs' motion as the Court has already concluded that Plaintiffs' motion must be denied on substantive grounds. For the sake of completeness, however, the Court notes that Plaintiffs did not provide a sufficient basis for the Court to consider any non-jurisdictional defects raised in Plaintiffs' untimely brief.

While a federal court must always remand a case prior to final judgment when it appears that the court lacks subject matter jurisdiction, a plaintiff seeking to remand based upon non-jurisdictional defects must raise these issues "within 30 days after the filing of the notice of removal[.]" 28 U.S.C. § 1447(c). As this case was removed on October 29, 2013, Plaintiffs were required to raise any such defects on or before November 28, 2013.

Furthermore, on November 14, 2013, this Court ordered that any such motion to remand for non-subject-matter issues must be filed on or before November 30, 2013. *See* ECF No. 8. Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter schedules of proceedings and "[a] schedule may only be modified for good cause and with the judge's consent." Fed.R.Civ.P. 16(b) (4). Whether "good cause" exists under Rule 16 hinges to a large extent on the diligence, or lack thereof, of the moving party. *Globespan Virata, Inc. v. Texas Instruments, Inc.,* No. 03–2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005).

While Plaintiffs failed to file their motion to remand before the expiration of either deadline, Plaintiffs ask the Court to treat their December 11, 2013 motion as a *nunc pro tunc* filing, and thereby deem the motion as having been filed on the date Plaintiffs filed their certification in opposition, *i.e.,* November 6, 2013. *See* ECF No. 18. Plaintiffs, however, provide no legal authority in support of their requested relief. Furthermore, while the Court specifically ordered Plaintiffs to provide citations to caselaw and recitations of fact sufficient to justify the Court considering Plaintiffs' untimely brief, see ECF No. 15, Plaintiffs' submission is devoid of both. *See* ECF No. 18. For example, Plaintiffs offer no explanation as to why they were unable to file their motion to remand in November. Plaintiffs' legal citations are also deficient, as these cases do not address the untimeliness issue created by Plaintiffs' late filing.

**IV. CONCLUSION**

For the foregoing reasons, the Undersigned respectfully recommends that Plaintiffs' motion to remand be denied. The parties are reminded that they have fourteen days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c)(2).

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 316988

Footnotes

1 In each cause of action, Plaintiffs reset the numbering of the Complaint's paragraphs. Therefore, the Court shall cite to page numbers when referencing the Complaint.

2 While Plaintiffs argue that removal is improper as the fictitious entities named in the Complaint did not consent to removal, the unanimity requirement does not apply when the non-joining defendants are unknown. *See Little v. Doe,* No. 09–5183, 2010 WL 3812364, at *2 n. 3 (D.N.J. Sept.28, 2010); *Doughtery, Clifford & Wadsworth, Corp. v. Magna Grp., Inc.,* No. 07–1068, 2007 WL 2579406, at *2 (D.N.J. June 19, 2007). Therefore, as Sears is the only known defendant, it did not need to obtain the consent of any other entity prior to removing the matter.

3 Assuming, *arguendo,* that Sears Holding were a defendant in this case, complete diversity likely would still exist because it appears that Sears Holding is a citizen of Delaware and Illinois.

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Affirmed in Part, Remanded in Part by Donlin v. Philips Lighting North America Corp., 3rd Cir.(Pa.), September 9, 2009

2007 WL 1238541
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Colleen DONLIN, Plaintiff,
v.
PHILLIPS ELECTRONICS NORTH AMERICA CORPORATION d/b/a Phillips Lightings Company, Defendant.

Civil Action No. 3:05-CV-0585.
|
April 26, 2007.

**Attorneys and Law Firms**

Theodore R. Laputka, Jr., Theodore R. Laputka, Jr. & Associates, Hazleton, PA, for Plaintiff.

Jacqueline E. Bedard, Kirpatrick & Lockhart Nicholson Graham LLP, Amy L. Groff, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Harrisburg, PA, for Defendant.

***MEMORANDUM***

RICHARD P. CONABOY, United States District Judge.

***1** Plaintiff Colleen Donlin ("Plaintiff") brought this action against Philips Electronics North America Corporation ("Defendant") where she worked as a temporary warehouse employee from May 13, 2002, to January 10, 2003, alleging discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). At the close of trial on March 8, 2007, Special Interrogatories were given to the jury asking three questions: 1) whether Plaintiff proved by a preponderance of the evidence that the reasons given by Philips Lighting for not hiring her were a pretext for discrimination and that her sex was a determinative factor in the decision not to hire her; 2) whether Plaintiff proved by a preponderance of the evidence she was entitled to back pay; and 3) whether she proved by a preponderance of the evidence she was entitled to front pay.[1] (*See* Doc. 99.) Because the issues of front and back pay are equitable remedies to be determined by the Court, *see Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843 (2001), as the Court had discussed previously with counsel, the jury verdict was advisory only as to those issues (Doc. 105 at 519).[2]

On March 9, 2007, the jury found Defendant had discriminated against Plaintiff on the basis of sex. (*See* Doc. 99.) In its advisory role, the jury also found Plaintiff was entitled to back pay damages of $63,050 and front pay damages of $395,795. (*Id.*)

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, when an advisory jury is used, the Court is to set out specific findings of fact and conclusions of law as to the matters submitted to the jury on an advisory basis. In accordance with Rule 52, the Court makes the following findings of fact and conclusions of law as to the issues of back pay and front pay.

***I. Findings of Fact***

1. On May 12, 2002, Plaintiff was placed in the position of warehouse associate at Defendant's warehouse in Mountaintop, Pennsylvania, by Adecco, a personnel placement company. (Doc. 105 at 41-42.)

2. Plaintiff was discharged on January 10, 2003. (Doc. 105 at 43 .)

3. Upon leaving Defendant's Mountaintop facility, Plaintiff collected unemployment compensation and looked for another job. (Doc. 105 at 39.)

4. Plaintiff secured a full-time position at Romark Logistics where she worked until August 2005 when she accepted a position at Mission Foods (Gruma Corporation d/b/a Mission Foods). (Doc. 105 at 74, 134.)

5. Plaintiff worked at Romark, a business about thirty miles from her house, for approximately two years. (Doc. 105 at 135.)

6. At the time of trial in March 2007 Plaintiff was employed by Mission Foods in Mountaintop,

Pennsylvania, and had worked there for one and one-half years, since August 2005. (Doc. 105 at 38, 134.)

7. Plaintiff was forty years old at the time of trial and has some college education. (Doc. 105 at 37.)

8. Plaintiff estimated she would have earned at the Defendant company approximately $182,923 for the years 2003 through the first two months of 2007. (Doc. 105 at 130.)

***2** 9. Plaintiff estimated her lost pension earnings for the same period to be approximately $9,453.[3] (Doc. 105 at 133.)

10. Plaintiff's estimation of total pay and benefits she would have received at Philip's from the time of discharge until the time of trial is $192,376. (Plaintiff's Exhibit 12.)

11. These figures were not presented as absolutely accurate, but as averages based in part on the earnings of an average employee with similar work habits and pension information supplied by Defendant company. (Doc. 105 at 124, 133, 140.)

12. Plaintiff's actual earnings for the same time period were $129,326. (Doc. 105 at 135.)

13. From this figure, Plaintiff deducted the cost of travel based on the mile differential between Defendant and Romark, a figure of $9,445 for a total actual earnings figure of $119,881. (Doc. 105 at 136, 137.)

14. Plaintiff asserted the difference in what she actually earned and what she would have earned at Philips was $72,495.[4] (Doc. 105 at 137.)

15. Concerning front pay, Plaintiff claims an annual pay differential of approximately $10,000. (Doc. 105 at 137.)

16. Projecting that she would work to age sixty-five (twenty-five years), Plaintiff claims a total pay differential of $250,000. (Doc. 105 at 137.)

17. For the same time period, Plaintiff estimated a pension value of $193,466. (Doc. 105 at 140.)

18. Combining these figures, Plaintiff estimated her total loss to be $443,466. (Doc. 105 at 141.)

19. Deducting $601 as a reduction based on the probability of dying, Plaintiff estimated the balance of front pay earnings to be $442,864. (Doc. 105 at 143.)

20. Plaintiff reduced this amount to present day value using a 5% interest calculation: she multiplied 5% by $442,864 and subtracted it annually for the twenty-five years arriving at a present day value of $122,845. (Doc. 105 at 144.)

***II. Conclusions of Law***

1. If it is found that an employer has engaged in an unlawful employment practice, Title VII authorizes, *inter alia,* a back pay award. *Booker v. Taylor Milk Co.,* 64 F.3d 860, 864 (3d Cir.1995) (citations omitted).

2. There is a presumption in favor of back pay, the intent of which is to make "persons whole for injuries suffered through past discrimination." *Id. (quoting Albermarle Paper Co. v. Moody,* 422 U.S. 405, 421 (1975)).

3. Expert testimony is not required for presentation of damage evidence. *See, e.g., Paolella v. Browning-Ferris, Inc.,* 158 F.3d 183, 194-95 (3d Cir.1998).

3. Plaintiff has suffered a back pay loss of $63,050 based on the difference between the amount she earned from her discharge until the time of trial ($129,326) and the approximate amount she would have earned (including pension benefits) had she remained at Philips ($192,376).

4. Where reinstatement is not appropriate, as is the case here, front pay is a proper remedy. *See, e.g., Feldman v. Philadelphia Housing Auth.,* 43 F.3d 823 (3d Cir.1994).

***3** 5. Although front pay is by nature speculative "[t]he risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim." *Goss v. Exxon Office Systems Co.,* 747 F.2d 885, 889 (3d Cir.1984) (citation omitted).

6. Front pay "is an award for a reasonable future period required for the victim to reestablish her rightful place in the job market." *Id.*

7. The $10,000 per year approximate differential testified to by Plaintiff is a reasonable projection of future lost earnings.

8. An award of front pay until retirement at age 65, a twenty-five year period, would be too speculative.

9. Ten years is a reasonable period of time for the award of front pay.

10. Therefore, Plaintiff is entitled to $100,000 as compensation for lost future wages.

11. The Court also finds Plaintiff's calculation of future pension benefits using a 5% multiplier to be reasonable, with an approximate future pension loss of $70,000.

12. Therefore, Plaintiff is entitled to a front pay award of $170,000.

13. Reducing this award to present value using Plaintiff's methodology, the present value of Plaintiff's future lost earnings and benefits is approximately $101,800.[5]

### *III. Conclusion*

Plaintiff is entitled to a back pay award of $63,050 and a front pay award of $101,800 for a total award of $164,850. An appropriate Order follows.

### *ORDER*

**AND NOW, THIS 26th DAY OF APRIL 2007 FOR THE REASONS SET OUT IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:**

1. Upon a jury verdict in her favor (*see* Doc. 99), Judgment is to be entered in favor of Plaintiff on her Title VII claim of discrimination on the basis of sex;

2. The Court has determined Plaintiff is entitled to a back pay award of $63,050;

3. The Court has determined Plaintiff is entitled to a front pay award of $101,800;

4. As a result, judgment in favor of Plaintiff and against Defendant is to be entered in the total amount of $164,850.

5. Post-trial motions, including fee petitions, are to be filed in accordance with the Local Rules of Court of the Middle District of Pennsylvania and the Federal Rules of Civil Procedure with the time for filing to be calculated from the date of this Order;

6. The Clerk of Court is directed to close this case.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1238541

Footnotes

1 In addition to front pay and back pay, Plaintiff sought punitive damages. (*See* Doc. 1 at 8.) The question of punitive damages was not put to the jury because the Court decided as a matter of law that there was insufficient evidence to support an award of punitive damages. (Doc. 105 at 519.)

2 Several issues arose at trial relating to damage testimony and evidence. Because of these difficulties, the Court discussed with counsel the ongoing problems and whether the case should be withdrawn from the jury to allow counsel time to properly prepare the case. (Doc. 105 at 76.) After discussion with the litigants, counsel expressed their desire to continue with the case and the Court agreed. (*Id.* at 79.)

3 Plaintiff does not have a pension at Mission Foods. (Doc. 105 at 138.)

4 The advisory jury's back pay award of $63,050 indicates they did not allow the cost-of-travel differential of $9,445.

5 Some disagreement exists even among experts as to the methodology used to discount an award to present value. Here, Plaintiff testified as to the method she used to arrive at the present value of the award sought.

*See supra* p. 5. Defendant questioned Plaintiff about the method used and her understanding of it, but no alternate methodology was suggested. (Doc. 105 at 218-19 .)

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 5437079
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

Stuart SUSSMAN, Plaintiff,
v.
CAPITAL ONE, N.A., Capital One Bank, Capital One Servs., Inc., Capital One Financial Corp., ABC Entities/Corps., John & Jane Does (1–100), Edward Montesdeoca, Kirsten Micco, Zelia Corey, and Brian Young, Defendants.

No. 14–01945(FLW).
|
Signed Oct. 24, 2014.

**Attorneys and Law Firms**

Gregory S. Schaer, Manalapan, NJ, for Plaintiff.

Steven J. Luckner, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Morristown, NJ, for Defendant.

**OPINION**

WOLFSON, District Judge.

***1** Plaintiff Stuart Sussman ("Sussman," or "Plaintiff") moves to remand the instant matter to Superior Court of New Jersey. Defendants Capital One, N.A. *et al.* ("Defendants" or "Capital One"), oppose Plaintiff's motion on the basis that the amount in controversy requirement for jurisdiction has been satisfied and the non-diverse parties Plaintiff added after removal—Defendants Edward Montesdeoca, Brian Young, Kirsten Micco, and Zelia Corey ("the four individual defendants")—should not be joined. In that connection, Capital One argues that when the citizenship of the four individual defendants is disregarded, complete diversity exists and this Court may properly exercise subject matter jurisdiction over the Complaint. For the reasons that follow, the Court finds that the amount in controversy requirement has been satisfied, Plaintiff's joinder of the four individual defendants is not permitted, diversity of citizenship continues to exist, and this Court retains jurisdiction over this case.

**I. BACKGROUND**

Plaintiffs' Amended Complaint sets forth the following facts and allegations. Stuart Sussman is a New Jersey citizen who was formerly employed by Capital One for fifteen years, the last seven of which were in Capital One's Freehold branch. Am. Compl., ¶¶ 1, 9. In April 2012, Sussman was diagnosed with a genetic skin disorder, for which he applied and received a medical leave. Am. Compl. at ¶¶ 13, 14. During his leave, he was also diagnosed as suffering from severe depression and anxiety. *Id.* at ¶ 14. Approximately seven days prior to Sussman's scheduled return to work, Sussman was notified that his former position was no longer available and was given sixty days to post for another position. *Id.* at ¶ 16. Sussman applied for several other positions within Capital One, but his applications were denied. *Id.* at ¶¶ 18–24, 28–34. Capital One extended Sussman's employment until April 24, 2013, at which point it terminated Sussman's position for failure to secure another position with the bank. *Id.* at ¶¶ 26, 36.

Based on his termination, on February 21, 2014, Plaintiff brought the instant action in the Superior Court of New Jersey, Law Division, Monmouth County, alleging claims against Capital One under the New Jersey Law Against Discrimination (NJLAD) and a tort claim for intentional infliction of emotional distress. Capital One timely removed the Complaint on March 27, 2014, on the basis that diversity exists between Plaintiff—which is a New Jersey resident —and Defendants—which are citizens of Delaware and Virginia. [1] Def. Notice of Removal, ¶¶ 8–12. On March 31, 2014, Plaintiff amended his petition as a matter of right, adding the following New Jersey defendants: Edward Montesdeoca, Brian Young, Kirsten Micco, and Zelia Corey, all Capital One employees who allegedly "participated in, aided or abetted, incited and/or provided substantial assistance or encouragement to the unlawful actions alleged in the Complaint." Am. Compl. at ¶¶ 3–6; Mot. to Remand at 6.

***2** Shortly thereafter, Plaintiff filed the instant motion for remand, arguing that (1) Capital One has failed to prove that Plaintiff seeks damages equal to or in excess of $75,000, the statutory minimum for diversity jurisdiction; and (2) the four individual defendants are properly joined, thus complete diversity is lacking

 © 2020 Thomson Reuters. No claim to original U.S. Government Works. 

among the parties. For these reasons, Plaintiff argues that this Court lacks subject matter jurisdiction over the action.

## II. LEGAL STANDARD

It is well established that a defendant may remove a civil action filed in state court to federal court if the latter would have had original jurisdiction to hear the matter in the first instance. 28 U.S.C. § 1441(b); *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990). The removing defendant bears the burden of establishing jurisdiction and compliance with all pertinent procedural requirements. *Id.* Once the case has been removed, however, the court may nonetheless remand it to state court if the removal was procedurally defective or subject matter jurisdiction is lacking. 28 U.S.C. § 1447(c). Removal statutes are to be strictly construed against removal, and all doubts are to be resolved in favor of remand. *Shamrock Oil and Gas Corp. v. Sheets*, 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir.1996).

When a claimant amends his complaint as a matter of right under Rule 15(a) of the Federal Rules of Civil Procedure to join non-diverse parties who would destroy diversity jurisdiction, some debate exists between district courts as to whether Section 1447(e)—which permits the court to deny joinder where a party seeks to add parties that would destroy diversity jurisdiction—still applies. *See Bernheim v. Bedrick*, 2007 WL 2900377 at *1–*2 (D.N.J. Oct.1, 2007); *see also Neuner v. Samost*, 2012 WL 5944143 (D.N.J. Nov.26, 2012). Most courts and commentators appear to embrace the applicability of Section 1447(e) under such circumstances. *See Dillard v. Albertson's, Inc.*, 226 F.3d 642 (5th Cir.2000) (unpublished) (Section 1447(e) applies even when amendment would normally be allowed without the court's leave); *Mayes v. Rapoport*, 198 F.3d 457, 462 n. 11 (4th Cir.1999) ("[A] district court has the authority to reject a post-removal joinder that implicates 28 U.S.C. § 1447(e), even if the joinder was without leave of court."); *McGee v. State Farm Mut. Auto. Ins. Co.*, 684 F.Supp.2d 258, 261 (E.D.N.Y.2009) ("[E]very federal court that has considered the issue has found that the discretionary decision called for by § 1447(e) is appropriate even when plaintiff has amended as a matter of course under Rule 15(a)(1)(A)."); *Wallace v. Dolgen Midwest, LLC*, 2014 WL 4338899 (N.D.Ohio Aug.29, 2014) ("[A]lthough typically a plaintiff can amend once as a matter of course prior to the filing of a responsive pleading, where, as here, the addition of a party will destroy the other court's jurisdiction and prejudice the other party, the general rule prevails that leave of court is necessary."); *Rule 15(a) Amendments and Removed Actions*, 6 FED. PRAC. & PROC. CIV. § 1477 (3d ed.) ("[A] party may not employ Rule 15(a) to interpose an amendment that would deprive the district court of jurisdiction over a removed action").

***3** Some courts, however, suggest that the fraudulent joinder analysis under Rule 20 of the Federal Rules of Civil Procedure applies to determine whether parties, who are added to a complaint that has been amended post-removal, are improperly joined. *See, e .g., City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F.Supp.2d 742, 754 n. 2 (D.N.J.2008) ("Had Plaintiff simply filed an amended pleading including claims against [Defendant], the appropriate analysis would be one of fraudulent joinder ...."); *see also Conover v. United Parcel Serv.*, 2006 WL 3534157 (D.N.J. Dec.7, 2006). Out of an abundance of caution, this Court will analyze Plaintiff's joinder under both Section 1447(e) and the fraudulent joinder doctrine.

## III. DISCUSSION*A. Diversity Jurisdiction at the Time of Removal*

First, this Court examines whether Capital One properly removed the case on the basis of Plaintiff's original complaint. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States ...." 28 U.S.C. 1332(a).

Plaintiff argues that Capital One has not met its burden of proof establishing that the amount in controversy requirement has been met because the complaint "does not articulate a specified amount of damages." Mot. to Remand at 4.

In cases where a plaintiff has not specifically stated in his complaint the amount in damages he seeks to recover, the Third Circuit counsels to follow the framework articulated in *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392 (3d Cir.2004). *See*

*Federico v. Home Depot,* 507 F.3d 188 (3d Cir.2007). *Samuel–Bassett* states that "when the relevant facts are not in dispute or findings have been made the District Courts adhere to the 'legal certainty' test." *Samuel–Bassett,* 357 F.3d at 398; *see also, e.g., Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 217 (3d Cir.1999) *abrogated by Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (explaining that the "legal certainty" test is met and remand is necessary "[w]hen it appears to a legal certainty that the plaintiff was never entitled to recover the minimum amount set by Section 1332"). However, when factual issues are in dispute, courts use the "preponderance of the evidence" standard to resolve those disputes before moving to the "legal certainty" test. *SamuelBassett,* 357 F.3d at 398.

Here, Plaintiff argues that his alleged damages are not capable of being ascertained and "it is equally plausible and possible that plaintiff's economic damages will be less than the jurisdictional amount [as] that they will be in excess of the jurisdictional amount ." Reply Brief at 14. However, Plaintiff does not dispute that (1) Plaintiff alleges unlawful termination under the NJLAD and seeks front and back pay under those claims, *see* Am. Compl. at 14; (2) Plaintiff's salary before he was terminated was $71,104, *see* Millholland Certif. at ¶ 2; and (3) that Plaintiff was terminated from his position on April 24, 2013. *See* Am. Compl. at 35. This Court finds that the relevant facts are not in dispute, and, accordingly uses the "legal certainty" test to determine whether Plaintiff's damages meet the jurisdictional minimum for purposes of remand.

***4** The relevant time period for calculating an award of back pay begins with the date of the alleged wrongful termination and ends at the time of trial. *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 373 (3d Cir.1987). Similarly, when calculating the front pay award, the jury must consider the expected future damages caused by a defendant's wrongful conduct from the date of judgment to retirement. *Id.* at 375. Plaintiff was terminated almost eighteen months ago, and it follows from the applicable law that if plaintiff proves he was unlawfully terminated under the NJLAD, his damages will likely exceed the amount in controversy requirement. Plaintiff's argument fails because he has not proved with legal certainty that he cannot recover the jurisdictional minimum; he merely argues that it is equally likely as not that his damages could fall below the statutory threshold. Thus, diversity jurisdiction existed at the time Capital One removed the case to this Court and the complaint was properly removed.

*B. Joinder of Four Additional Defendants*

Next, this Court looks at whether Plaintiff's amended complaint was proper under both Section 1447(e) and the fraudulent joinder doctrine.

*1. Section 1447(e)*

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. 1447(e). While the Third Circuit has never explicitly articulated a standard under Section 1447(e), it has implicitly endorsed the rule set forth by the Fifth Circuit in *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir.1987). *See Hayden v. Westfield Ins. Co.,* 2014 WL 4637987 (3d Cir. Sept.18, 2014) ("While we have not yet addressed the appropriate analytical approach to § 1447(e) (and need not do so here), the Fifth Circuit has instructed that when a district court is 'faced with an amended pleading naming a new nondiverse defendant in a removed case, it should scrutinize that amendment more closely than an ordinary amendment, and should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities.' ") (quoting *Hensgens,* 833 F.2d at 1182); *see also City of Perth Amboy v. Safeco Ins. Co. of Am.,* 539 F.Supp.2d 742, 746 (D.N.J.2008).

Here, under the *Hensgens* standard, Plaintiff's joinder should not be permitted. First, the circumstances strongly hint that jurisdictional concerns at least partly motivated the amendment, notwithstanding Plaintiff's counsel certification claiming that "[t]he addition of the individual defendants in this matter as named parties was not made for the purpose of defeating federal jurisdiction," Schaer Certif. at 2. These circumstances include (1) Plaintiff's Case

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Information Statement that was filed with his State Court Complaint on February 10, 2014, in which Plaintiff indicated he did not anticipate adding any parties arising out the same transaction or occurrence despite being familiar with the individual defendants and their positions at Capital One, and (2) the timing of Plaintiff's amendment, which occurred a mere four days after removal. "In cases in which it was apparent that the plaintiff knew about the non-diverse defendant's activities at the time the suit was originally brought in state court, but still chose not to include that party as a defendant, the courts have viewed any later attempt to add the non-diverse defendant as nothing more than an attempt to destroy diversity." *Salamone v. Carter's Retail, Inc.,* 2010 WL 762192 (D.N.J. Mar.5, 2010); *see also Norplant Contraceptives Prod. Liab. Litig.,* 898 F.Supp. 429, 431 (E.D.Tex.1995). Further, Plaintiff's inclusion of claims against the individual defendants in his Amended Complaint is utterly conclusory—beyond stating the defendants' positions at Capital One, no specific facts are alleged tying the defendants to discrimination under the NJLAD,[2] suggesting a hurried attempt to amend Plaintiff's complaint as a matter of right before Capital One served its answer. *See* Am. Compl. Therefore, the first factor under *Hensgens* strongly points against joinder.

*5 Second, it is undisputed that Plaintiff has not been dilatory in amending his Complaint—he did so four days after removal and before any discovery took place, and Capital One concedes that the amendment was timely. *See* Am. Compl. Thus, the second *Hensgens* factor weighs in favor of joinder.

Third, Plaintiff would not be unduly prejudiced in denying joinder, because Plaintiff is free to sue the four individual defendants separately, in state court. While parallel state and federal proceedings expend more judicial resources, the four individual defendants are not jointly and severally liable with Capital One and the two year statute of limitations for filing a separate NJLAD action against the individual defendants has not yet run. *Montells v. Haynes,* 133 N.J. 282, 627 A.2d 654 (1993); *see also, e.g., Hayden,* 2014 WL 4637987 (3d Cir. Sept.18, 2014) (Plaintiff "could have easily and timely filed suit against [the additional defendant] in state court."). As the third *Hensgens* factor also weighs against joinder, this Court concludes that were it to apply Section 1447(e) to Plaintiff's amendment, joinder of the four individual defendants would be inappropriate.

*2. Fraudulent Joinder*

The fraudulent joinder doctrine "represents an exception to the requirement that removal be predicated solely upon complete diversity." *Brown v. Jevic,* 575 F.3d 322, 326 (3d Cir.2009). "Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment .... If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* at 326.

In evaluating whether joinder was fraudulent, the district court must assume as true all factual allegations of the complaint, at the time the complaint was filed. *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851–52 (3d Cir.1992). The court "also must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Id.* at 852. And, although a court may properly pierce the pleadings in certain circumstances, it "must not step from the threshold jurisdictional issue into a decision on the merits." *In re Briscoe,* 448 F.3d at 219.

I now turn to Capital One's fraudulent joinder argument and look first at the allegations in Plaintiff's Amended Complaint.[3] Plaintiff alleges that Defendants' (1) termination of Plaintiff's position, (2) failure to hire him for other available positions, and (3) failure to make reasonable accommodations or engage in the interactive process to make accommodations, amounted to disability discrimination under the NJLAD. Am. Compl., Count One, Count Two, Count Three, Count Four. Plaintiff further alleges that Capital One discriminated against him based on his age in violation of the NJLAD. *Id.,* Count Five. Finally, Plaintiff alleges that Capital One's conduct amounted to the intentional infliction of emotional distress. *Id.,* Count Six. Plaintiff includes a separate count of individual liability under the NJLAD against the four additional defendants, three of whom were District Managers and one of whom was a Local

Distribution Executive at Capital One—because they "aided, abetted, incited, and/or actively participated" in the events described in the Amended Complaint. *Id.,* Count Seven.

***6** For the reasons that follow, I find that Plaintiff's joinder of the four additional defendants is fraudulent. First, three of the four individual defendants—Montesdeoca, Micco, and Corey—were not Sussman's supervisors; rather, they were allegedly involved in reviewing Sussman's job applications and interviewing him for intra-company positions. Am. Compl. at ¶ 15. The Third Circuit has predicted, and the New Jersey Superior Court's Appellate Division has held, that aiding and abetting liability under the NJLAD is limited to supervisors, mirroring the liability standards under Title VII of the Civil Rights Act. *Hurley v. Atlantic City Police Dep't,* 174 F.3d 95, 127 (3d Cir.1998); *see also Herman v. Coastal Corp.,* 348 N.J.Super. 1, 27–28, 791 A.2d 238 (App.Div.2002), *certif. denied,* 174 N.J. 363, 807 A.2d 195 (2002). Therefore, Plaintiff's individual claims against Motesdoeca, Micco, and Corey are barred under the NJLAD and, therefore, the inclusion of these three defendants constitutes fraudulent joinder.

Second, Plaintiff's claim against his supervisor, Young, is also not colorable. The NJLAD forbids individuals from engaging in actions that "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." N.J. Stat. Ann. § 10:5–12 (West). "In order to hold an employee individually liable as an aider or abettor, a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Cicchetti v. Morris County Sheriff's Office,* 194 N.J. 563, 594, 947 A.2d 626 (2008); *see also Tarr v. Ciasulli,* 181 N.J. 70, 84, 853 A.2d 921 (2004).

In his Amended Complaint, Plaintiff merely states that Young was informed about Plaintiff's medical condition and of Plaintiff's desire to return to work following the conclusion of his medical leave. Am. Compl. at ¶¶ 15, 21. Giving Plaintiff's allegations all credence, this Court does not find Plaintiff's statements to even potentially create aiding and abetting liability. Plaintiff does not even attempt to connect Young's knowledge of Plaintiff's medical condition and desire to continue working to his discrimination claims; his allegations certainly do not include statements that Young performed wrongful acts that created injury, was aware of his roles in facilitating illegal activity, or knowingly or substantially assisted in the principal violation.

Plaintiff cites to two cases decided elsewhere in the district to defend the sparseness of his allegations and to argue that his Amended Complaint does not fail the fraudulent joinder test: (1) *Mersmann v. Continental Airlines,* 335 F.Supp.2d 544, 445 (D.N.J.2004) and (2) *Freichs v. Lifestar Response Corp.,* 2009 WL 3754190 at *2 (D.N.J.2009). However, both cases are distinguishable. In *Mersmann,* plaintiff alleged that one of the non-diverse defendants investigated the accusations against plaintiff "and ultimately terminated her," which are specific facts pointing to aiding and abetting liability. F.Supp.2d at 445. Likewise, in *Freichs,* plaintiff alleged that the non-diverse defendant was her direct supervisor and assisted in carrying out her termination, which was the basis of her NJLAD claim. 120 Ohio St.3d 1507, 900 N.E.2d 624, 2009 WL 275190 at *2. Here, however, Plaintiff makes no such connection in his Amended Complaint between Young's actions and his complained-of NJLAD violation (failure to hire)—indeed he fails to even mention a single action Young may have taken to create liability under the NJLAD and instead, merely mentions Young's knowledge of his situation. *See* Am. Compl. Under the fraudulent joinder analysis, there are simply no allegations to substantiate a claim against Young such that joinder of the defendant would be appropriate. Therefore, under the fraudulent joinder doctrine, this Court finds that Plaintiff improperly joined all four individual defendants.

***7** Accordingly, because Plaintiff's joinder of Montesdeoca, Young, Micco, and Corey is inappropriate under Section 1447(e) and the fraudulent joinder doctrine, this Court denies the joinder and retains jurisdiction over the case.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' motion to remand is denied.

An appropriate order will follow.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5437079

Footnotes

1 According to Capital One's removal petition, (1) Defendant Capital One, N.A. is a Delaware corporation with its principal place of business in McLean, Virginia, and therefore is a citizen of Delaware and Virginia; (2) Defendant Capital One Bank is not a legal entity and is solely a trade-name used by Capital One, N.A. and therefore has no citizenship to consider for purposes of diversity; (3) Defendant Capital One Financial Corporation is a Delaware corporation with its principal place of business in McLean, Virginia, and therefore is a citizen of Delaware and Virginia; and (4) Defendant Capital One Services, LLC I/S/H as Capital One Services, Inc. is a limited liability company whose citizenship is determined by the citizenship of each of its members, and because Capital One Services LLC's sole member is Capital One, N.A., Capital One Services, LLC is therefore a citizen of Delaware and Virginia. Def. Notice of Removal at ¶¶ 8–12.

2 Further discussion of the cursory nature of Plaintiff's allegations against the four individual defendants is discussed under the fraudulent joinder analysis. *See infra* at 10–12.

3 Capital One first argues that "[f]raudulent joinder is tested on the causes of action contained in the state court complaint prior to its removal" and cites to a Fifth Circuit argument for support. *See Cavallini v. State Farm Mut. Auto Ins. Sco.,* 44 F.3d 356, 264 (5th Cir.1995) ("[A] complaint amended post-removal cannot divest a federal court of jurisdiction."). Of course, this case does not control our analysis. In any event, in *Cavallini,* at issue was not the addition of a non-diverse defendant, but rather the addition of factual allegations against a non-diverse party who was already a defendant at the time of removal. Construing *Cavallini* to mean that the court cannot consider the post-removal joinder of parties that would defeat subject matter jurisdiction flies in the face of explicit federal statutes stating the contrary. 28 U.S.C. 1447(e); *see also* 28 U.S.C. 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Further, subsequent Fifth Circuit decisions have actually posited that the fraudulent joinder analysis does not apply to the post-removal joinder of new parties because if a court permits a party to amend its complaint to join non-diverse parties under Rules 15 or 16 of the Federal Rules of Civil Procedure, the non-moving party has already had a chance to contest the joinder; once the court permits amendment, it loses jurisdiction over the lawsuit and the case must be remanded. *Borden v. Allstate Ins. Co. .,* 589 F.3d 168, 171 (5th Cir.2009). *Cobb v. Delta Exports, Inc. .,* 186 F.3d 675 (5th Cir.1999).

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1123724
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

SIGNATURE BUILDING SYSTEMS, INC., Plaintiff,
v.
SPEARS MANUFACTURING CO., Partners 3190 LLC, and Washington JP Construction, LLC, Defendant.

NO. 3:17-CV-1795
|
Signed 02/26/2018

**Attorneys and Law Firms**

Michael R. Mey, Wormuth, Mey & Sulla, LLP, Scranton, PA, for Plaintiff.

Kathryn A. Dux, German, Gallagher & Murtagh, Philadelphia, PA, Andrew J. Kramer, Kane Pugh Knoell Tryo & Kramer, LLP, Norristown, PA, for Defendant.

**MEMORANDUM**

A. Richard Caputo, United States District Judge

***1** Presently before me is the Motion to Remand (Doc. 6) filed by Plaintiff Signature Building Systems, Inc. ("Signature"). For the reasons that follow, the motion will be denied.

**I. Background**

Signature commenced this action in the Court of Common Pleas of Lackawanna County, Pennsylvania on or about August 8, 2017 against Spears Manufacturing Co. ("Spears") and Partners 3190 LLC and Washington JP Construction, LLC (collectively, "Partners"). (*See* Doc. 1-1, *generally*). In its complaint for declaratory relief, Signature alleges that between 2015 and 2017, it purchased CPVC pipe manufactured by Spears for use in sprinkler systems for modular homes Signature constructed. (*See id.* at ¶ 4). The piping is alleged to be covered by a "limited lifetime warranty." (*Id.* at ¶ 5). It is further averred that Spears provided training on its piping and at no time did it caution Signature against the use of Propylene Glycol as an antifreeze in the piping system, and, in fact, Spears inspected chemicals used by Signature including Propylene Glycol. (*See id.* at ¶¶ 7-8).

In April 2017, Partners, the purchaser of certain modular units containing Spears piping in the sprinkler systems, informed Signature that Propylene Glycol had been located in the sprinkler system which could compromise the structural integrity of the piping. (*See id.* at ¶ 9). Thereafter, Signature communicated with Spears requesting that it honor a warranty between the parties. (*See id.* at ¶ 10).

Despite Partners' claim, Signature's own testing of the piping indicated that Propylene Glycol does not impact the structural integrity of the CPVC piping. (*See id.* at ¶ 11). Nonetheless, Partners rejected the modular units purchased from Signature as defective and demanded arbitration before the American Arbitration Association. (*See id.* at ¶¶ 14-15). Signature contends, though, that its agreement with Partners required that this dispute be submitted and decided by PFS, a third party engineering inspector. (*See id.* at ¶ 17). Partners did not respond to Signature's request for this matter to be submitted for resolution to PFS. (*See id.*).

As a result, Signature commenced this action in the Court of Common Pleas of Lackawanna County seeking the following declaratory relief:

1. That Signature is entitled to the full benefit of the limited lifetime warranty offered by Spears;

2. That Spears neither expressly nor implicitly prohibited the use of Propylene Glycol to provide freeze protection.

3. That the warranty claim made by Partners 3190 LLC and Washington JP Construction, LLC falls squarely within the warranty provision of the contract between the parties requiring the same to be resolved by PFS and any other relief the Court deems just and proper.

(*Id.* at Wherefore Clause).

On October 4, 2017, Partners removed the action to this Court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. (*See* Doc. 1, *generally*). Partners

allege that they are citizens of Massachusetts, that Spears is a California citizen, and that Signature is a citizen of Pennsylvania. (*See id.* at ¶¶ 3-8). Further, Partners contend that the amount in controversy exceeds $75,000.00, exclusive of punitive damages, interest, and costs. (*See id.* at ¶ 9). Spears agreed to the removal of this action by notice of consent filed on October 12, 2017. (*See* Doc. 5, *generally*).

***2** Signature filed the instant motion to remand and supporting brief on October 20, 2017. (*See* Docs. 6-7, *generally*). Therein, Signature requests that the Court exercise its discretion and decline to exercise jurisdiction over this case. (*See* Doc. 7, 6). The thrust of Signature's argument is that "[t]he issues to be decided in this dedicatory [sic] judgment action are purely those involving state law with none touching upon, even remotely, any federal interest." (*Id.*). Signature also contends that remand is proper on the basis of "judicial economy since there is currently pending an action in Lackawanna County and that the issues involved are exclusively those of state law." (*Id.*) [1]

On November 3, 2017, Spears filed its brief in opposition to the motion to remand. (*See* Doc. 10, *generally*). Citing the Third Circuit's recent decision in *Kelly v. Maxum Speciality Insurance Group*, 868 F.3d 274 (3d Cir. 2017), Spears argues that the relevant factors guiding a district court's decision of whether to abstain from entertaining a declaratory judgment action weigh in favor of retaining jurisdiction over the case. (*See* Doc. 10, 4-7).

Partners' brief in opposition to the motion to remand and supporting documents were filed on November 7, 2017. (*See* Doc. 11, *generally*). In its brief, Partners note that Signature did "not contend that complete diversity does not exist or that the amount in controversy does not exceed $75,000.00." (*Id.* at 8 n.4). Further, Partners submitted evidence indicating its initial estimation that it would cost $240,500.00 to repair the purportedly defective piping in the modular units. (*See id.* at Ex. "H"). [2] Partners subsequently provided additional evidence showing that it has incurred $300,110.08 in damages to repair the piping system. (*See* Doc. 13-2, *generally*).

Signature filed its reply brief in further support of its motion to remand on November 20, 2017. (*See* Doc. 12, *generally*). Signature takes the position that because its complaint requests only declaratory relief, Partners cannot show that this action meets the amount in controversy requirement set forth in 28 U.S.C. § 1332. (*See id.* at 3).

The motion to remand is now ripe for disposition.

**II. Discussion**

As stated, Signature argues that this case should be remanded because: (1) the amount in controversy is not satisfied since only declaratory relief is sought in the complaint; and/or (2) it is proper for a district court to decline to exercise jurisdiction over a declaratory judgment action. (*See* Doc. 7, 3-6; Doc. 12, 3-6). [3] I will address those contentions in order.

***3** Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). One jurisdictional basis on which a civil action may properly be removed to federal court is "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citation omitted). Removal statutes are to be strictly construed against removal, and all doubts are resolved in favor of remand. *See A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (citation omitted).

Here, there appears to be no dispute that the parties are citizens of different states. (*See* Docs. 1, 7, and 10-13, *generally*). Thus, for diversity jurisdiction purposes, the question becomes whether the amount "in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). The statutory provision concerning the requirements for removal based on diversity provides, in relevant part, that

(2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—

(A) the notice of removal may assert the amount in controversy if the initial pleading seeks—

(i) nonmonetary relief; or

(ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

(B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c).

Initially, Signature's state court complaint does not establish the amount in controversy because it seeks only nonmonetary relief in the form of a declaratory judgment. *See id.* at § 1446(c)(2)(A)(i). As a result, pursuant to the removal statute, the amount in controversy is properly asserted in the notice of removal. *See id.* at § 1446(c)(2)(A)(ii). "Although declaratory judgments do not directly involve the award of monetary damages, 'it is well established that the amount in controversy in such actions is measured by the value of the object of the litigation.' " *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 397-98 (3d Cir. 2016) (alteration omitted) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed. 2d 383 (1977)); *Miller v. Liberty Mutual Grp.*, 97 F.Supp.2d 672 (W.D. Pa. 2000) (denying motion to remand and rejecting the plaintiff's argument that the jurisdictional limit was not met where the complaint requested only declaratory relief and not damages); *see also* 14AA Charles Alan Wright et al., Federal Practice & Procedure § 3708 (4th ed. 2016) ("With regard to actions seeking declaratory relief, the amount in controversy is the value of the right or the viability of the legal claim to be declared, ...").

The notice of removal establishes that the amount in controversy exceeds the jurisdictional minimum. (*See* Doc. 1, *generally*).[4] In determining whether the claim has met the amount in controversy requirement, "estimations of the amounts recoverable must be realistic. The inquiry should be objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 403 (3d Cir. 2004). "The court must measure the amount 'not ... by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.' " *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (quoting *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)).

***4** Applying this standard, Partners has submitted proof that the value of the object of the litigation exceeds the jurisdictional threshold. (*See* Doc. 11, Ex. "H"; Doc. 13-2, *generally*). More particularly, Partners originally estimated that it would cost $240,500.00 to reinstall the allegedly defective piping. (*See* Doc. 11, Ex. "H"). Partners has since incurred approximately $250,000.00 to, among other things, install compliant sprinkler systems and construct soffits enclosing the new sprinkler systems. (*See* Doc. 13-2, Ex. "B"). Thus, Signature's contention that Partners "has offered no evidence" that the amount in controversy is in excess of $75,000.00 falls flat. (Doc. 12, 3). Rather, Signature has not provided any evidence contesting these damages or that the jurisdictional minimum has been met. Based on the proof submitted by Partners, they have established by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. Jurisdiction over this action therefore exists pursuant to § 1332.

Signature alternatively argues that even if the requirements of § 1332 are met, the Court should decline to exercise jurisdiction over the action because the complaint seeks only declaratory relief. (*See* Doc. 7, 3-6; Doc. 12, 3-6). "Granting a declaratory judgment is ... discretionary and a court may abstain from entertaining an action seeking only declaratory relief." *Kelly*, 868 F.3d at 281 (citing *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014)). While this discretion is "substantial," it is still "bounded and reviewable." *Id.* at 282.

In determining whether to entertain a declaratory action, a court must first determine whether there is a "parallel state proceeding." *Id.* "Although the existence of a parallel state proceeding is but one factor for courts to consider, it is a significant factor treated with 'increased emphasis.' " *Id.* (quoting *Reifer*, 751 F.3d at 144). To be parallel, "there must be a substantial similarity in issues and parties between contemporaneously pending proceedings," and the "mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient." *Id.* at 283-84.

After the existence or non-existence of a parallel proceeding is determined, the following factors should be considered in determining whether to exercise jurisdiction:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata* ....

*Id.* at 283 (quoting *Reifer*, 751 F.3d at 146).

Initially, there is no parallel state court proceeding pending to this action. *See, e.g.*, *Sechrist v. Farmland Mut. Ins. Co.*, No. 16-1155, 2016 WL 6082132, at *2 (M.D. Pa. Oct. 18, 2016). As such, " 'the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise." *Kelly*, 868 F.3d at 282 (quoting *Reifer*, 751 F.3d at 144). And, because the absence of a pending parallel state proceeding is not outweighed by opposing factors, jurisdiction over this dispute will be retained. *See id.*

First, a declaratory judgment here will resolve the uncertainty that prompted the commencement of the declaratory judgment action in the Court of Common Pleas. *See Kelly*, 868 F.3d at 288.

Second, none of the parties will be inconvenienced by having this matter adjudicated in the federal forum as I sit in Luzerne County which is adjacent to Lackawanna County. *See id.*; *Sechrist*, 2016 WL 6082132, at *2.

Third, "the parties do not aver that any public interest is at stake other than the usual interest in the fair adjudication of legal disputes, an interest which the District Court is well-equipped to address." *Kelly*, 868 F.3d at 288.

***5** Fourth, "the parties do not argue that other remedies would be adequate, let alone more convenient. The state and federal courts are equally able to grant effective relief in these circumstances." *Id.* at 289.

Fifth, the parties' obligations under the respective agreements are not pending in a state court. *See id.* Thus, the general policy of restraint is not applicable here.

Sixth, because there is no action pending in state court, there is no concern of duplicative litigation.

And, finally, there does not appear to be a concern about procedural fencing or *res judicata.*

In sum, given the absence of a pending parallel state proceeding and finding that the other factors do not outweigh the lack of such a proceeding, there is no basis to decline to exercise jurisdiction over the matter *sub judice.*

## III. Conclusion

For the above stated reasons, the motion to remand this action to the Court of Common Pleas of Lackawanna County will be denied.

An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1123724

Footnotes

1 Signature does not identify any action pending in state court. (*See* Doc. 7, *generally*). Rather, it appears that Signature is of the view that jurisdiction over the instant action which has been removed to federal court still exists in state court. This position is not correct. *See In re Diet Drugs*, 282 F.3d 220, 232 n. 6 (3d Cir. 2002) ("A proper filing of a notice of removal immediately strips the state court of its jurisdiction."); *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, 215 F.3d 1005, 1011 (9th Cir. 2000) ("The removal of an action to federal court necessarily divests state and local courts of their jurisdiction over a particular dispute.").

2 Exhibit "H" to Partners' brief in opposition to the motion to remand is also Exhibit "5" to Signature's Complaint. (*See* Doc. 1-1, Ex. "5").

3 Notably, "because federal courts apply federal procedural law in federal actions, the [Declaratory Judgment Act] and not state declaratory judgment law supplies the procedural law that governs this case. This is not withstanding the fact that the relief sought in the removed Declaratory Action was requested under the Pennsylvania Declaratory Judgments Act, ..." *Kelly*, 868 F.3d at 281 n.4 (citations omitted).

4 When a plaintiff challenges the amount in controversy asserted by the defendant in a notice of removal, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co. v. Owens*, —— U.S. ——, 135 S.Ct. 547, 554, 190 L.Ed. 2d 495 (2014). Signature here has not submitted any proof as to the amount in controversy in opposition to the notice of removal other than asserting that Partners has "no evidence" that the jurisdictional limit is met. (Doc. 12, 3). As explained in the text, Signature is wrong.

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 5994601
United States District Court, M.D. Pennsylvania.

Calvin R. WALKER and Joyce Formby, H/W, Plaintiff,
v.
MONOCACY VALLEY ELECTRIC, INC., Defendant.

Civil No. 1:17-cv-02142
|
Signed 11/15/2018

**Attorneys and Law Firms**

David A. Fitzsimons, David W. Park, Martson Deardorff Williams & Otto, Carlisle, PA, for Plaintiff.

Joseph Goldberg, Julie H. Kinkopf, Weber, Gallagher, Simpson, Stapleton, Fires & Newby, LLP, Philadelphia, PA, for Defendant.

**MEMORANDUM**

SYLVIA H. RAMBO, United States District Judge

***1** In this federal diversity action, Plaintiffs Calvin Walker ("Plaintiff Walker") and Joyce Formby ("Plaintiff Formby," collectively "Plaintiffs") have brought claims for wrongful termination and punitive damages against Defendant Monocacy Valley Electric, Inc. ("Defendant") for terminating Plaintiff Walker's employment after he expressed an intention to file for workers' compensation benefits. Presently before the court is Defendant's motion to dismiss Plaintiff Formby's claim for lack of standing and failure to state a claim, and to dismiss Plaintiffs' claim for punitive damages as an unavailable form of relief. For the reasons set forth below, Defendant's motion will be granted in part and denied in part.

**I. Background**

The following facts are taken from Plaintiffs' complaint and accepted as true for purposes of deciding the instant motion to dismiss. From April 1, 2013 to December 5, 2015, Defendant employed Plaintiff Walker as a master electrician and project superintendent. (Doc. 1, ¶¶ 5-6.) On November 23, 2015, Plaintiff Walker fell from a ladder at a project site in Alexandria, Virginia, injuring himself and leaving him unable to return to work. (*Id.* at ¶ 7-8.) Less than two weeks later, on December 4, 2015, three of Defendant's principals questioned Plaintiff Walker regarding his on-the-job injury and indicated that, if he intended to file for workers' compensation, he "had to go." (*Id.* at ¶¶ 9-10.) The following day, Plaintiff Walker was effectively discharged from his employment. (*Id.* at ¶ 11.)

In 2013, a similar incident also occurred when Plaintiff Walker was injured on a worksite just three days into his employment with Defendant. (*Id.* at ¶¶ 12-13.) Again, a principal directed Plaintiff not to file for workers' compensation and instead laid him off while he recovered. (*Id.* at ¶¶ 13-14.) Plaintiff Walker is aware of other such incidents where employees of Defendant were laid off or discharged shortly after suffering workplace injuries. (*Id.* at ¶¶ 14-16.)

Plaintiff Walker alleges that, as a result of his retaliatory, wrongful discharge, he suffered, and continues to suffer, monetary and emotional damages. His claims include a joint claim with Plaintiff Formby that "Plaintiffs were forced to liquidate retirement savings, [and] suffered penalties and tax payments triggered by the liquidation of Plaintiff Walker's 401(k) plan and Plaintiff Formby's 401(k) plan." (*Id.* at ¶ 27.) Plaintiff Walker also seeks damages for wrongful discharge and punitive damages for Defendant's historical practices in this area. (*Id.* at ¶ 31.) Plaintiff Formby seeks damages for the monies she expended during the time Plaintiff Walker was unable to work, specifically: the funds withdrawn from her 401(k), the taxes and penalties associated with this withdrawal, and the "future tax-sheltered earnings from interest that otherwise would have been realized." (*Id.* at ¶ 27.)

**II. Standard of Review**

When drafting a complaint, a plaintiff is charged with setting forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint should "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ). For

pleadings to meet this standard, they must go beyond "labels and conclusions" or "formulaic recitation of the elements of a cause of action" to show that the pleader is entitled to relief. *Id.* In determining the sufficiency of a complaint, the Third Circuit has outlined a three step approach:

> ***2** First, it must "take note of the elements [the] plaintiff must plead to state a claim." Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to assumption of truth." Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations omitted).

A defendant may challenge a complaint on these grounds by motioning for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. When deciding whether to dismiss a complaint under Rule 12(b)(6), the court, under a reasonable reading of the complaint, must accept every factual allegation in the complaint as true, *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), as well as draw reasonable inferences that can be made from those factual allegations. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007). A complaint that avers enough facts to "raise a right to relief above the speculative level," making a plaintiff's claim "plausible on its face," will survive a motion to dismiss. *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

A defendant may attack a plaintiff's complaint for want of standing under Rule 12(b)(1). There are two categories of challenges made under this rule: facial or factual. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). The significance of this distinction centers on how the court is to treat the factual allegations of the nonmoving party. Where, as is here, the challenge to subject matter jurisdiction does not dispute the facts alleged in the complaint, the court is required to "consider the allegations of the complaint as true." *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) ).

## III. Discussion

Defendant argues that Plaintiff Formby's wrongful discharge claims should be dismissed for failure to state a claim and for lack of standing, and that Plaintiffs' claim for punitive damages is unavailable under the facts averred. In response, Plaintiff Formby argues that her injuries are derivative of her husband's discharge and thus are compensable. Plaintiffs also argue that the absence of case law showing an award of punitive damages pursuant to a common law cause of action for wrongful discharge does not automatically preclude the award of punitive damages if the required elements are proven at trial.

### A. Wrongful Discharge Claim

Defendant argues that Plaintiff Formby fails to allege a *prima facie* claim for wrongful discharge because she was never actually employed by Defendant. (Doc. 6, p. 6 of 13.) Plaintiffs and Defendant both cite an unpublished Third Circuit Court of Appeals opinion where the court predicted what the Supreme Court of Pennsylvania would consider to be the *prima facie* elements of a wrongful discharge claim. (Doc. 1, ¶ 25; Doc. 6, p. 6 of 13.) The elements the Third Circuit identified are as follows: (1) the employee engaged in a protected activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *Deily v. Waste Mgt. of Allentown*, 55 Fed. Appx. 605, 607 (3d Cir. 2003) (unpublished). Therefore, at a minimum, Plaintiff Formby must allege that she meets the most essential threshold fact that runs through each element: that she was employed by Defendant. Plaintiff Formby has not made this assertion, nor could she. Because Plaintiff Formby alleges no facts [1] that would allow her to seek recovery against Defendant for wrongful discharge, her claim will be dismissed with prejudice. [2]

### B. Punitive Damages

***3** Plaintiffs correctly argue that Pennsylvania recognizes punitive damages pursuant to certain causes of action in order to "deter and punish egregious behavior." *Marin v. Johns-Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1096 (Pa. 1985). To be eligible to receive such damages, the complaining party must prove that "a person's actions are of such an outrageous

nature as to demonstrate intentional, willful, wanton or reckless conduct." *SHV Coal Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702, 704 (Pa. 1991); *see also Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (Pa. 1984); Restatement (Second) of Torts § 908(2) (1979). Punitive damages may be awarded where the defendant's conduct evidences a "reckless indifference to the rights of others." *Taylor v. Albert Einstein Medical Center*, 723 A.2d 1027, 1037 (Pa. Super. 1998), *rev'd on other grounds*, 562 Pa. 176, 754 A.2d 650 (Pa. 2000). On the other side, Defendant asserts that, not only did Plaintiffs not support their contention of the availability of punitive damages, but that no Pennsylvania court has ever awarded punitive damages under *Shick. v. Shirey*, 552 Pa. 590, 716 A.2d 1231, 1238 (Pa. 1998).

In *Shick*, the Pennsylvania Supreme Court extended the common law cause of action of wrongful discharge to instances where an employer retaliates against an at-will employee for filing for workers' compensation benefits. *Id.* The court did so, not based upon a novel theory of liability between an employer and employee, but because the Pennsylvania state legislature had evinced a clear public policy by enacting the state's workers' compensation scheme, and firing an employee for taking advantage of the scheme subverts that public policy. *Id.* at 602-604, 127 S.Ct. 1955. The court analogized the establishment of public policy and the availability of the common law cause of action of wrongful discharge to other established public policies and employers' attempts to thwart them. *Id.* Not only did the court use these instances to bring retaliation for filing for worker's compensation benefits, under the umbrella of wrongful discharge, but other courts have allowed plaintiffs to seek punitive damages under similar cases of an employer's subversion of public policy. *See Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699 (3d Cir. 1988) (punitive damages sought in wrongful discharge for refusal to serve intoxicated patron); [3] *Difiore v. CSL Behring, U.S., LLC*, Civ. No. 13-05027, 2014 U.S. Dist. LEXIS 130179, 2014 WL 4632324, at *10 (E.D. Pa. Sept. 17, 2014) (regarding the refusal to commit unethical or illegal activity, "Dismissal of punitive damages at this juncture is premature."); *Elbeshbeshy v. Franklin Institute*, 618 F.Supp. 170, 171 (E. D Pa. 1985) ("Although the parties cite no Pennsylvania cases on point, the court notes that courts generally allow recovery of punitive damages for wrongful discharge where the employer acted with malice.").

Additionally, a few district courts in the Third Circuit have directly addressed the validity of punitive damages pursuant to a claim of wrongful discharge in retaliation for filing a workers' compensation claim, and they have all concluded that, at least at this stage in the proceedings, a bar to proving these damages is inappropriate. *Richetti v. Saks & Co.*, Civ. No. 11-0256, 2013 U.S. Dist. LEXIS 100549, at *24 (W.D. Pa. May 28, 2013) (summary judgment denied for punitive damages and back pay, "given that the applicability of this relief will depend on the facts adduced at trial"); *Cosme v. Durham*, Civ. No. 07-cv-3153, 2008 WL 324020, at *6, 2008 U.S. Dist. LEXIS 8570, at *18 (W.D. Pa. Feb. 6, 2008) ("Plaintiff has pled adequate facts which may *potentially* entitle him to recover [punitive] damage[s] under the wrongful discharge theory.").

***4** The court finds that, at least at this stage in the proceedings, it would be inappropriate to bar Plaintiff Walker from seeking to prove his assertion that Defendant's conduct was so "intentional, willful, wanton or reckless" as to warrant an award of punitive damages. *See SHV Coal Inc.*, 587 A.2d at 704. Plaintiff Walker avers that, in addition to the means and manner used to discourage him from filing a workers' compensation claim, and his subsequent firing, he also experienced similar tactics used by his employer at the beginning of his employment with Defendant. (Doc. 1, ¶¶ 8-16.) Plaintiff Walker also alleges that other employees were treated similarly and were laid off or discharged in order for Defendant to prevent employees from filing workers' compensation claims. (*Id.*) Plaintiff Walker has plausibly alleged that he, as a part of a larger pattern or practice of Defendant retaliating against employees, was treated in manner that may warrant an award of punitive damages, and there is a reasonable expectation that discovery may support these claims. [4]

## IV. Conclusion

For the reasons stated herein, the court will grant Defendant's motion to dismiss Plaintiff Formby's claims, removing her from the action, and deny

Defendant's motion to dismiss Plaintiff Walker's claim for punitive damages.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 5994601, 2018 IER Cases 422,085

## Footnotes

1 Defendant did Plaintiff Formby an unnecessary favor by introducing a loss of consortium theory in its motion to dismiss (Doc. 6, p. 7 of 13), which Plaintiffs inartfully incorporated into their brief in opposition (Doc. 11, p. 8-10). However, under Pennsylvania law, such a cause of action can only be maintained if the loss of consortium stems from the spouse's physical or emotional injury off-the-job. Damages from on-the-job injuries, outside of the established narrow public policy exceptions, are the exclusive province of the Pennsylvania workers' compensation framework. *Dugan v. Bell Telephone*, 876 F.Supp. 713, 728 (W.D. Pa. 1994). Even giving Plaintiff Formby's allegations the widest latitude, the complaint does not give rise to a claim of loss of consortium.

2 Plaintiffs continually conflate damages that may have arisen from issues dealing with the administration of Plaintiff Walker's workers' compensation claim and damages that may have arisen due to Defendant's alleged wrongful discharge of Plaintiff Walker. In Plaintiffs' complaint, they aver that "[w]hile Plaintiff Walker was unable to work and undergoing treatment, Plaintiffs were forced to liquidate retirement savings ... of Plaintiff Walker's 401(k) plan and Plaintiff Formby's 401(k) plan," and in their brief in opposition to Defendant's motion, Plaintiffs state "[Plaintiff Formby] ought to be able to recover for [the expenditures], as it was solely caused by the Defendant's conduct in wrongfully terminating Plaintiff Walker and contesting his workers' compensation claim." (Doc. 1, ¶ 27; Doc. 11, p. 11.) Pennsylvania law draws a bright line at the time Plaintiff Walker was physically able to return to work. The law also establishes a line between damages attributable to the physical injuries suffered by Plaintiff Walker and damages attributable to the alleged wrongful discharge. Because she did not plead sufficient facts to demonstrate that her claims are derivative of Plaintiff Walker's termination, rather than his physical injury, Plaintiff Formby did not carry her burden in establishing her right to redress her grievances in this court. Accordingly, Defendant's motion to dismiss will be granted with respect to Plaintiff Formby's claims, and she is thereby dismissed from this action.

3 After finding an absence of cases granting an award, the court stated, "[n]othing in the Pennsylvania cases suggests that the Pennsylvania Supreme Court would not join the numerous courts in other jurisdictions that have awarded punitive damages in wrongful discharge cases, once it has been established that wrongful discharge is a tort, rather than a breach of contract." *Id.* at 703.

4 Because this court dismisses Plaintiff Formby's wrongful termination claim, her claim for punitive damages naturally must also be dismissed.

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 7373022
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States District Court, D. New Jersey.

Desiree PEREZ, Plaintiff,
v.
LUXURY RETREATS PROCESSING INC., et al., Defendants.

Civ. No. 19-17490 (ES) (MAH)
|
Signed 12/03/2019
|
Filed 12/05/2019

**Attorneys and Law Firms**

Kenneth L. Winters, Jardim, Meisner, & Susser, P.C., Florham Park, NJ, for Plaintiff.

Bruce R. Ewing, Dorsey & Whitney, LLP, New York, NY, for Defendants.

**REPORT AND RECOMMENDATION**

Michael A. Hammer, United States Magistrate Judge

**I. INTRODUCTION**

*1 This matter comes before the Court by way of Plaintiff Desiree Perez's Motion to Remand pursuant to 28 U.S.C. § 1447(c). The Honorable Esther Salas, U.S.D.J., referred this motion to the Undersigned for a Report and Recommendation. *See* Local Civ. R. 72.1(a)(2). The Undersigned has considered the matter without oral argument. *See* Local Civ. R. 78.1(b). For the reasons set forth herein, the Undersigned respectfully recommends that the District Court deny Plaintiff's motion.

**II. BACKGROUND**

Plaintiff visited Defendant Luxury Retreats International Inc.'s ("LRI") website to identify a potential vacation rental in the Dominican Republic. [1] Compl. ¶ 5, July 31, 2019, D.E. 1-1. Based on pictures and other representations found on LRI's website, Plaintiff selected a property known as the Las Hamacas Beachfront at Cap Cana. *Id.* ¶¶ 6-7. Plaintiff thereafter executed a "Booking Agreement" and prepaid the $28,676.12 booking fee in full. *Id.* ¶ 8. In advance of her stay, Plaintiff visited the property during an unrelated business trip and discovered that the property was in disarray. *Id.* ¶¶ 9-10. Plaintiff informed LRI of the property's dilapidated condition and booked a new villa through the company. *Id.* ¶ 11. At that time, Plaintiff requested a refund of the $28,676.12 booking fee or that LRI alternatively credit that sum towards the new rental. *Id.* To date, Plaintiff has received neither a refund nor a transfer credit. *Id.* ¶ 12.

Plaintiff subsequently filed this action in the Superior Court of New Jersey, Law Division, Bergen County against LRI and Defendant Luxury Retreats Processing Inc. ("LRP"). [2] *See* Notice of Removal, ¶ 1, D.E. 1. The seven-count complaint asserts various common law claims as well as violations of the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. §§ 56:8-1 to -211, in connection with the advertisement and rental of the property. *See id.* ¶ 2. Plaintiff specifically alleges that she suffered an ascertainable loss within the meaning of the CFA of $28,676.12. Compl. ¶ 16. Plaintiff seeks treble damages and attorneys' fees in connection with her CFA claim. *See* Compl., Count One Wherefore Clause. Plaintiff further alleges that Defendants' "failure to exercise prudent judgment pertaining to its requirements of the owner of the villa and its failure to supervise and inspect the villa" constitute gross negligence and warrant an award of punitive damages. *Id.* ¶¶ 33-36.

Defendants timely removed this action on the basis of jurisdiction conferred by 28 U.S.C. § 1332(a). Notice of Removal, ¶¶ 4-10. As proof that the amount in controversy exceeds $75,000, Defendants point to the $28,676.12 sum along with Plaintiff's demand for treble damages and attorneys' fees. *Id.* ¶¶ 7-8. Plaintiff has now moved to remand this action to state court for lack of subject matter jurisdiction. Mot. to Remand, Sept. 26, 2019, D.E. 11. Specifically, Plaintiff argues that the amount in controversy does not satisfy the $75,000 threshold under 28 U.S.C. § 1332(a).

**III. ANALYSIS** [3]

*2 A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. §

1441(a). "Where a complaint does not raise a question of federal law, a district court may properly exercise subject matter jurisdiction only if the amount in controversy exceeds the value of $75,000 and diversity exists among the adverse parties." *In re Benicar (Olmesartan) Prod. Liab. Litig.*, 198 F. Supp. 3d 385, 386–87 (D.N.J. 2016) (citing 28 U.S.C. § 1332(a)). As a general rule, federal courts strictly construe removal statutes to avoid an unintended enlargement of their jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("The intent of Congress drastically to restrict federal jurisdiction between citizens of different states has always been rigorously enforced by the courts."); *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015) ("The federal removal statute, 28 U.S.C. § 1441, is strictly construed, requiring remand if any doubt exists over whether removal was proper."). "The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

28 U.S.C. § 1446, as amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA"), Pub. L. No. 112-63, 125 Stat. 758-65 (2011), clarifies the procedure to resolve challenges to the amount-in-controversy requirement. "If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.' " *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (quoting 28 U.S.C. § 1446(c)(2)). "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.* (citing 28 U.S.C. § 1446(c)(2)(A)). Specifically, the notice of removal may state the amount in controversy if the plaintiff seeks "nonmonetary relief; or ... a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded[.]" 28 U.S.C. § 1446(c)(2)(A)(i)-(ii).

Where, as here, the complaint does not demand a specific total sum, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co.*, 574 U.S. at 87. If challenged, the amount in controversy set forth in the notice of removal shall control only "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2)(B). In that circumstance, "both sides submit proof and the court decides ... whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co.*, 574 U.S. at 88. To convince the Court to retain jurisdiction, "a defendant must justify its jurisdictional assertions with some objective factual basis." *Portillo v. Nat'l Freight, Inc.*, 169 F. Supp. 3d 585, 597 (D.N.J. 2016).

The Undersigned finds that Defendants have adequately alleged in the Notice of Removal that the amount in controversy exceeds the statutory threshold. *See* Notice of Removal, ¶¶ 7-8. Plaintiff avers in the Complaint that she suffered an ascertainable loss of $28,676.12, which may be trebled under the CFA to $86,028.36. *Id.*; *see also Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding Inc.*, 408 F. App'x 566, 572 (3d Cir. 2010) ("The CFA entitles private plaintiffs to awards of treble damages and attorney's fees. Under New Jersey law, a court must include these amounts when determining whether it has subject matter jurisdiction in a diversity matter." (internal citation omitted)); *Suber v. Chrysler Corp.*, 104 F.3d 578, 587-88 (3d Cir. 1997) (holding that district courts may consider the award of treble damages under the CFA when calculating the amount in controversy so long as the plaintiff is not "precluded to a legal certainty from recovering under the [CFA]"). The Undersigned is thus satisfied that diversity jurisdiction existed at the time of removal.[4]

***3** Plaintiff nonetheless advances two arguments in support of her contention that remand is proper. Pl.'s Br. at 5, D.E. 11-1. Plaintiff first argues that because Defendants removed this action based on the availability of treble damages under the CFA, Defendants "must concede that Perez has stated a claim under the [CFA]." *Id.* at 8. It follows, according to Plaintiff, that if Defendants subsequently move to dismiss the CFA claim for failure to state a claim upon which relief may be granted, "then they necessarily are asserting that the amount in controversy cannot meet the $75,000 threshold for diversity jurisdiction."

*Id.* Second, Plaintiff relies on a declaration that she filed in support of her motion to remand wherein she "renounce[s] any right to recover in excess of $74,500.00 ... from the Defendants" and declares that "the Complaint in this action shall be deemed hereby to be irrevocably amended accordingly." Plaintiff's Decl. in Support of Mot. to Remand, ¶ 3, D.E. 11-2. Based on the 1988 amendment to 28 U.S.C. § 1447(c), Plaintiff submits that this Court must give effect to her post-removal stipulation. *See* Pl.'s Br. at 9-18.

The Undersigned finds neither argument to be persuasive. Defendants' removal of this action based on the putative value of the CFA claim is not a concession that Plaintiff has in fact stated a claim under that statute. One of the primary purposes of diversity jurisdiction is to provide out-of-state defendants access to a neutral forum for the fair adjudication of their claims. *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019); *Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 499 (3d Cir. 1997). Accordingly, it would contravene the very purpose of the removal statute to require a party to effectively stipulate to the validity of the claim that he or she seeks the federal court to adjudicate.

Nor would the potential dismissal of the claim divest this Court of subject matter jurisdiction. *See Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 395-96 (3d Cir. 2016); *Huber v. Taylor*, 532 F.3d 237, 243-47 (3d Cir. 2008); *Lindsey v. M.A. Zeccola & Sons, Inc.*, 26 F.3d 1236, 1244 n.10 (3d Cir. 1994) ("When diversity exists at the time the case is filed, it is not affected by the dismissal of one of the claims even though the amount recoverable on the remaining claim is less than the required [$75,000]."); *cf. Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-41 (2007) (noting the general rule that a federal court may not reach the merits of the claims without first determining whether subject matter jurisdiction exists). "It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.' " *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L. Ed. 154 (1824)).

With respect to Plaintiff's declaration that she has renounced any damages in excess of $74,500.00, it is well-recognized that a post-removal stipulation reducing the amount in controversy below the statutory threshold "does not deprive the district court of jurisdiction." *St. Paul Mercury Indem. Co.*, 303 U.S. at 292; *see also Hunt v. DaVita, Inc.*, 680 F.3d 775, 777-78 (7th Cir. 2012) ("[Plaintiff's] post-removal disclaimer of damages exceeding $75,000 could not defeat federal jurisdiction after a proper removal based on the complaint."); *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789 (8th Cir. 2012) ("A plaintiff may ... avoid removal by including a binding stipulation with his petition stating that he would not seek damages greater than the jurisdictional minimum. Such a filing must be made prior to the defendant's removal of the case." (internal quotation marks and citation omitted)); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 667 (3d Cir. 2002) ("[A] plaintiff's stipulation subsequent to removal as to the amount in controversy or the types of relief sought is of 'no legal significance' to the court's determination." (quoting *Angus v. Shiley, Inc.*, 989 F.2d 142, 145 (3d Cir. 1993)).

***4** Notwithstanding that general consensus, Plaintiff argues that the United States Supreme Court's seminal decision in *St. Paul Mercury Indemnity Co.* and the subsequent cases relying on the principles set forth therein are inapposite because "*St. Paul* was overruled by the 1988 amendment of 28 U.S.C. § 1447(c)." Pl.'s Reply Br. at 2, D.E. 16. Prior to 1988, § 1447(c) stated in relevant part: "If at any time before final judgment that the case was removed improvidently and without jurisdiction, the district courts shall remand the case." 28 U.S.C. § 1447(c) (1987). Congress thereafter amended the subsection to read: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." § 1016(c), PL 100-702, 102 Stat. 4642, 4670 (1988). According to Plaintiff, "the standard for remand was changed from requiring that removal have been *improvidently granted* ... to remand at *any time if it appears the district court lacks jurisdiction*," and thus, post-removal stipulations must be given effect. Pl.'s Br. at 17 (emphasis in original).

The Court is unconvinced. The strong weight of authority is against Plaintiff's position. *See, e.g.*, *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232, n.1 (2007) (reiterating "the general rule that postremoval events do not deprive federal courts

of subject-matter jurisdiction"); *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998) (stating that "a federal court will *keep* a removed case" notwithstanding a "change in the citizenship of a party or a subsequent reduction of the amount at issue below jurisdictional levels" (emphasis in original)); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 n.4 (5th Cir. 1996) ("§ 1447(c) cannot be read to overrule the repeatedly expressed view that changes after removal cannot eliminate jurisdiction and require remand."); *Baldridge v. Kentucky-Ohio Transp., Inc.*, 983 F.2d 1341, 1348 n.11 (6th Cir. 1993) ("[C]ourts have not construed [the amendment] in this revolutionary way."); *In re Shell Oil Co.*, 966 F.2d 1130, 1133 (7th Cir. 1992) ("Neither the text of the revised § 1447(c) nor its legislative history implies that Congress altered the traditional view ... that jurisdiction present at the time a suit is filed or removed is unaffected by subsequent acts.").

In *Wisconsin Department of Corrections*, the United States Supreme Court addressed the meaning of 28 U.S.C. § 1447(c) in the course of resolving whether defendants can remove an action to federal court where certain claims may be subject to Eleventh Amendment immunity:

> The statutory section that contains the provision deals, not with the question of what is removable, but with the procedures that a federal court is to follow after removal occurs. It is entitled: "Procedure after removal generally." § 1447. In substance, the section differentiates between removals that are defective because of lack of subject-matter jurisdiction and removals that are defective for some other reason, *e.g.*, because the removal took place after relevant time limits had expired. For the latter kind of case, there must be a motion to remand filed no later than 30 days after the filing of the removal notice. § 1447(c). For the former kind of case, remand may take place without such a motion and at any time. *Ibid.* The provision, then, helps to specify a procedural difference that flows from a difference in the kinds of reasons that could lead to a remand. That objective is irrelevant to the kind of problem presented in this case.

*Wisconsin Dep't of Corr.*, 524 U.S. at 392–93. Accordingly, the 1988 amendment to 28 U.S.C. § 1447(c) did not implicitly overrule the general proposition that, "for purposes of removal jurisdiction, we are to look at the case as of the time it was filed in state court." *Id.* at 390.

**IV. CONCLUSION**

***5** For the reasons set forth above, the Undersigned respectfully recommends the District Court deny Plaintiff's Motion to Remand. The parties have fourteen days to file and serve objections to this Report and Recommendation. *See* 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

**All Citations**

Slip Copy, 2019 WL 7373022

Footnotes

1 The Court assumes as true the factual allegations in the complaint. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992).

2 Plaintiff alleges that LRP was "the receiver of her funds." Compl. ¶ 39.

3 A motion to remand is dispositive. *See In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998). Accordingly, the Court addresses Plaintiff's motion via Report and Recommendation.

 © 2020 Thomson Reuters. No claim to original U.S. Government Works. 

4 The parties do not dispute that complete diversity exists among the parties.

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.